# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54860-7-II |
| Respondent, | |
| v. | |
| S.J., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A superior court commissioner found S.J. gravely disabled and extended her involuntarily treatment at Western State Hospital for 180 days.  S.J. moved for revision, which the superior court judge denied.  S.J. appeals the order denying revision, arguing that the findings of fact contained therein were not sufficiently specific to permit review, and that the findings of fact were not supported by substantial evidence.  We hold that because we are allowed to consider the commissioner's findings, the findings of fact are sufficiently specific to permit review.  We further hold that the findings of fact are supported by sufficient evidence, and that the findings support the conclusion that S.J. was gravely disabled.  Thus, we affirm.

FACTS

On June 13, 2019, S.J. was committed for 90 days to Western State Hospital for a grave disability stemming from a mental disorder.[1]  The State filed two subsequent petitions for 180-day involuntary treatment at Western State Hospital.  The petition at issue here was the second of these two, filed in January, 2020, alleging that S.J. was gravely disabled and that S.J. was "not ready for a less restrictive placement and require[ed] continued treatment at [the] hospital."  Clerk's Papers (CP) at 30.  S.J. contested her confinement.  The hearing was set before a superior court commissioner.

At the hearing, staff psychologist Dr. Debra Burnison testified regarding S.J.'s mental condition.  Dr. Burnison based her testimony on her mental status examination of S.J., her review of S.J.'s records, her personal observations, and conversations with S.J.'s psychiatrist and social workers.

Dr. Burnison testified that S.J. suffered from schizoaffective disorder bipolar type, and that she exhibited symptoms of psychosis, including "pretty significant mood lability" and delusional thinking.  Verbatim Report of Proceedings (VRP) (Feb. 13, 2020) at 5.  S.J. exhibited improved cognitive control, but declining volitional control, including argumentative, disruptive, and hyperverbal speech led to numerous negative interactions with her peers.  Dr. Burnison explained that S.J. had an extensive history of treatment for mental illness, including over

---

[1] Under former RCW 71.05.320(1)(a) (2018), the court shall remand a person to the custody of department of social and health services or other certified facility for ninety days of intensive treatment if the court or jury finds grounds set forth in RCW 71.05.280, including when a person is gravely disabled.  RCW 71.05.280(4).

30 community hospitalizations. Dr. Burnison testified that S.J. attended only 55 percent of treatment programs in the hospital and had no rational understanding of her psychiatric needs, including the necessity of continued medication. Dr. Burnison testified that S.J. had a history of stopping her medications when released into the community and that she felt like she does better in the community when she is not on her medications.

It was Dr. Burnison's opinion that S.J., as a result of her mental disorder, would not be able to consistently meet her basic health and safety needs if released from the facility. Dr. Burnison opined that S.J.'s mood lability and manner of speech were significant barriers to her ability to meet her basic needs for things like housing, food, and clothing. Dr. Burnison testified that S.J.'s history of stopping her medications resulted in numerous hospitalizations and Western State admissions. Dr. Burnison testified that if released, S.J. would end up rehospitalized because she did not have a rational understanding of her treatment needs, did not believe her medications were helping her, and had a history of repeated hospitalizations for failure to maintain her medication. Dr. Burnison recommended that S.J. remain at Western State Hospital and that there were no less restrictive alternatives at that time.

On cross examination, Dr. Burnison testified that S.J. was taking her medication and accepting her medical treatment voluntarily, that she had a bank account, and had planned to live in Grays Harbor following discharge. Dr. Burnison testified that S.J. had previously been granted independent privileges to travel the grounds of the hospital for short periods of time, but that the hospital subsequently withdrew those privileges.

S.J. testified that she had several thousand dollars in her bank account and received disability income. She said that she had planned to live in an apartment in Grays Harbor upon

3

discharge from the hospital. S.J. testified that she had medical providers there, was familiar with the public transit system, and that she would not stop taking her medication if released. S.J. stated that she understood why she was committed to the hospital in the past, but she disputed Dr. Burnison's account of her mental condition, stating that Dr. Burnison wasn't telling the truth. When asked if she had trouble in the past "going off" of her medication, S.J. claimed that she "never stopped" taking medications in the past. VRP (Feb. 13, 2020) at 20.

The commissioner signed a written order committing S.J. to involuntary treatment for 180 days. In a boilerplate checkbox section, the commissioner concluded that S.J. continued to be gravely disabled and "as a result of a mental disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over action, is not receiving such care as is essential for health and safety." CP at 34. The commissioner also made handwritten findings that S.J. had "30 community hospitalizations, 4 prior [Western State Hospital] admissions," and that S.J.'s current mental status examination revealed "mood lability, verbal aggression, abundant detailed speech, tangential delusional thinking, history of stopping medication, impaired volitional control, provoking peers, unable to provide for her own health and safety, needs structure." CP at 34.

S.J. moved to revise the commissioner's order. A superior court judge heard arguments from the parties, considering only the evidence before the commissioner. The judge then stated that "under the clear, cogent, and convincing standard, I do think there is a basis for the 180 days." Verbatim Transcript of Proceedings (Mar. 6, 2020) at 24-25. The superior court judge denied the motion for revision and issued a written order, which stated:

4

No. 54860-7-II

The court finds that the State proved by clear, cogent, and convincing evidence that the respondent is gravely disabled, and that no less restrictive alternative to hospitalization is in her best interests.

CP at 100.

S.J. appeals the superior court judge's order denying her motion for revision. Notice of Appeal, No: 19-6-01150-5 (Super. Ct. Pierce Cty., Wash., Apr. 1, 2020).

ANALYSIS

S.J. first argues that we can cannot consider any findings in the commissioner's order, and that the judge's order denying revision is inadequate to support meaningful review. Alternatively, S.J. challenges the sufficiency of the evidence supporting a decision that S.J. was gravely disabled. We hold that because we may consider the commissioner's findings, the order is adequate for our review, that all the findings of fact are supported by sufficient evidence, and that the findings support the conclusion that S.J. was gravely disabled.

I. LEGAL PRINCIPLES

After a person has completed 90 days of involuntary treatment under former RCW 71.05.280(4) (2018) and former RCW 71.05.320(1) (2018), a person may be involuntarily committed for an additional 180 days if the State proves that they remain gravely disabled because of a mental disorder. RCW 71.05.320(4)(d), (6).[2] The relevant statute defined "gravely disabled" as:

a condition in which a person, as a result of a mental disorder, or as a result of the use of alcohol or other psychoactive chemicals: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning

---

[2] At the time of S.J.'s commitment hearing, former RCW 71.05.020 (2019), .280 (2018), and .320 (2018) applied.

evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Former RCW 71.05.020(22) (2019), *amended by* LAWS OF 2019 ch. 446, § 2.

The court must enter written findings of fact and conclusions of law. *In re the Det. of Thomas LaBelle*, 107 Wn.2d 196, 218-19, 728 P.2d 138 (1986); MPR 3.4(b). The findings of fact must be sufficiently specific to permit meaningful review. *LaBelle*, 107 Wn.2d at 218. A determination of grave disability must be supported by clear, cogent, and convincing evidence. RCW 71.05.310; *LaBelle*, 107 Wn.2d at 209-10.

On a motion to revise the commissioner's decision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues before the commissioner. *In the Matter of the Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). We review the superior court's ruling, not the commissioner's decision. *Det. of L.K.*, 14 Wn. App. 2d at 550. However, when a superior court denies a motion to revise the commissioner's ruling, the commissioner's decision becomes the superior court's decision. *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017) (citing RCW 2.24.050). This is because a refusal to "revise" leaves the action of the commissioner unchanged. *In re the Dependency of B.S.S.*, 56 Wn. App. 169, 170-171, 782 P.2d 1100 (1989).

We review challenges to the sufficiency of the evidence in the light most favorable to the prevailing party. *In the Matter of the Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459 (2019). Where the standard is clear, cogent, and convincing evidence, findings must be supported by substantial evidence sufficient to show the fact at issue to be "highly probable." *LaBelle*, 107 Wn.2d at 209. "Substantial evidence is evidence that is in sufficient quantum to persuade a fair-

minded person of the truth of the declared premise." *In the Matter of Det. of T.C.*, 11 Wn. App. 2d 51, 56, 450 P.3d 1230 (2019) (internal quotation marks omitted) quoting *In the Matter of the Det. of A.S.*, 91 Wn. App. 146, 162, 955 P.2d 836 (1998). We will not disturb the trial court's findings of "grave disability" if the findings of fact are supported by substantial evidence which the trial court could reasonably have found to be clear, cogent, and convincing. *LaBelle*, 107 Wn.2d at 209. We do not review credibility determinations. *In re the Det. of H.N.*, 188 Wn. App. at 744, 763, 355 P.3d 294 (2015). The party challenging a finding of fact bears the burden of showing the standard of proof has not been met. *Det. of A.S.*, 91 Wn.App. at 162.

Under former RCW 71.05.020(22), the statute in effect at the time, "gravely disabled" had two definitions. Here, the superior court found S.J. gravely disabled under subsection (b) of former RCW 71.05.020(22), which stated that a person is "gravely disabled" when such person "as a result of a mental disorder . . . manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety."[3] Implicit in this definition is that a person is "*unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment." *LaBelle*, 107 Wn.2d at 208.

This definition also incorporates the concept of "decompensation," which enables "the State to treat involuntarily those discharged patients who, after a period of time in the community, drop out of therapy or stop taking their prescribed medication and exhibit rapid

---

[3] While a strict and literal reading of this provision is oriented in past tense, i.e., "is not receiving such care," our Supreme Court has interpreted this same language to be prospective, to include situations where a person "if released, *would not* receive such care as is essential for his or her safety." *LaBelle*, 107 Wn.2d at 207-08.

deterioration in their ability to function independently." *LaBelle*, 107 Wn.2d at 206 (internal quotation marks omitted). The legislature added this definition to the statute to address the "revolving door" syndrome in mental health, where patients cyclically move from the hospital to the community only to relapse and become rehospitalized. *LaBelle*, 107 Wn.2d at 206. This allows the State to intervene before a mentally ill person's condition reaches crisis proportions, and enables the State to provide the kind of continuous care and treatment that could break the cycle of hospitalization and relapse, and restore the individual to satisfactory functioning. *LaBelle*, 107 Wn.2d at 206.

To prevail on a claim under former RCW 71.05.020(22)(b), the State must produce recent evidence of significant loss of cognitive or volitional control, and the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety. *LaBelle*, 107 Wn.2d at 208. "It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in his best interests." *LaBelle*, 107 Wn.2d at 208. The evidence must show that treatment is *essential* to an individual's health or safety and the harmful consequences likely to follow if involuntary treatment is not ordered. *LaBelle,* 107 Wn.2d at 206.

## II. FINDINGS SUFFICIENT FOR REVIEW

S.J. argues that our review should be constrained to the superior court judge's written order, and that we cannot consider the findings in the commissioner's order. She then argues that the judge's findings are insufficient to support meaningful appellate review. We hold that because we consider the commissioner's order, the findings of fact are sufficiently specific for review.

8

The superior court judge here denied S.J.'s motion to revise, and the judge's order did not make any findings or conclusions aside from denying S.J.'s motion to revise. Thus, the commissioner's order became the superior court's order, and we review the commissioner's order as adopted by the superior court judge. *Maldonado*, 197 Wn. App. at 789. S.J. does not argue that the findings of fact entered by the court commissioner are insufficient for review. Because we can consider the commissioner's order, S.J.'s argument fails.

### III. STATE PROVED THAT S.J. WAS GRAVELY DISABLED

S.J. alternatively argues that the State failed to prove by clear cogent, and convincing evidence that S.J. was gravely disabled under former RCW 71.05.020(22)(b). Specifically, S.J. argues that the State merely proved that hospitalization might be beneficial. We hold that the State properly proved that S.J. was gravely disabled.[4]

"Where the trial court has weighed the evidence, our review is generally 'limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment.'" *In re Det. of M.K.*, 168 Wn. App. 621, 630, 279 P.3d 897, 902 (2012) (quoting *LaBelle*, 107 Wash.2d at 209). Unchallenged findings of fact are verities on appeal. *In Re Det. of Peterson*, 197 Wn. App. 722, 730, 389 P.3d

---

[4] The State also argues that we should affirm the trial court's decision on alternate grounds by holding that S.J. was gravely disabled under subsection (a) of former RCW 71.05.020(22). The superior court did not find that S.J. was gravely disabled under this definition, and a finding of grave disability under this subsection would require us to engage in fact finding. Our function is to review the action of the trial courts. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We do not "hear or weigh evidence, find facts, or substitute [our] opinions for those of the trier-of-fact." *Quinn,* 153 Wn. App. at 717. Thus, we decline to consider this argument.

780 (2017). Here, we review the evidence admitted at the hearing to determine whether that evidence properly supports the findings of fact, and whether the findings of fact support the conclusion that S.J. was gravely disabled.[5]

A.    *Clear, Cogent, and Convincing Evidence Supports the Findings of Fact*

The commissioner's order contains several findings of fact. The commissioner found that S.J. suffered from the mental disorder of Schizoaffective Disorder–Bipolar Type; she manifested severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over her actions; she would not receive such care as is essential for health and safety; she had 30 prior community hospitalizations and 4 prior WSH admissions; she had mood lability, verbal aggression, abundant detailed speech, tangential delusional thinking; she had a history of stopping medication; she had impaired volitional control, evidenced by provoking peers; she was unable to provide for her own health and safety; and she needed structure.

S.J. did not assign error to any specific findings of fact, but appears to argue only that the State failed to sufficiently prove that she manifested severe deterioration in routine functioning as shown by repeated and escalating loss of cognitive or volitional control and that she was not meeting her essential health and safety needs because of her deteriorated mental functioning. We consider all other findings of fact verities on appeal.

---

[5] S.J. also argues that the commissioner improperly considered a declaration in support of the petition. We do not consider this declaration in our analysis.

1. *S.J. manifested severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over her actions*

One finding of fact states, "as a result of a mental disorder [S.J.] manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions." CP at 34. We hold that this finding is supported by sufficient evidence.

At the hearing, Dr. Burnison testified that S.J. suffered from symptoms of psychosis, including delusional and tangential thinking, mood lability, verbal aggression, and abundant and overly detailed speech. Dr. Burnison further testified that S.J. continued to have difficulty with volitional control. Specifically, she testified that S.J. had repeated episodes of argumentative, disruptive, and hyperverbal speech towards her peers that led to numerous negative interactions with those peers. Dr. Burnison's testimony and opinions were based on her examination and observations of S.J., her review of S.J.'s records, and conversations with S.J.'s treatment providers.

S.J. argues that she presented evidence to refute Dr. Burnison's testimony. However, we do not do not review credibility determinations, nor do we reweigh the evidence; we consider the evidence in the light most favorable to the prevailing party. *In re Det. of B.M.*, 7 Wn. App. 2d at 85. Considering the evidence in this light, it is highly probable that S.J. manifested severe deterioration in routine functioning evidenced by repeated and escalating loss of volitional control over her actions. Thus, this finding of fact is supported by clear, cogent, and convincing evidence.

2. *S.J. would not receive such care as is essential for health and safety*

Another finding states that S.J. would not receive such care as is essential for her health and safety. We hold that this finding is supported by sufficient evidence.

Dr. Burnison testified that it was her opinion that if S.J. was released from the hospital, she would not be able to consistently meet all of her basic health and safety needs as a result of her mental illness. Specifically, Dr. Burnison testified that S.J.'s mood lability would be a significant barrier to working with people in her community and thus prevent her from meeting her basic needs. Dr. Burnison testified that S.J. needed structure or else she would not be able to obtain necessary medical treatment, namely her medications. Dr. Burnison testified that S.J. had failed to take her medications during past episodes where she was out of treatment in the community, and that she expressed a dismissive attitude about the necessity of her medications. Dr. Burnison testified that S.J. believed she was better off not taking her medications. Moreover, at the hearing, S.J. denied that she ever stopped taking her medications in the past despite evidence to the contrary.

Reviewing the evidence in the light most favorable to the State, it is highly probable that if released, S.J. would not receive such care as would be essential to her health and safety. Thus, this finding of fact is supported by clear, cogent, and convincing evidence.

B. *Findings of Fact Support the Conclusions of Law*

The superior court ultimately concluded that S.J. continued to be gravely disabled under former RCW 71.05.020(22)(b). The findings of fact support this conclusion.

A grave disability under RCW 71.05.020(22)(b) requires a showing of two requirements: that the person "manifests severe deterioration in routine functioning evidenced by repeated and

escalating loss of cognitive or volitional control," and that he or she "is not receiving such care as is essential for his or her health or safety." Former RCW 71.05.020(22)(b). The State is required to provide evidence of recent, significant loss of cognitive or volitional control, and that such loss of control would cause the individual not to receive essential care should they be released. *LaBelle*, 107 Wn.2d at 206. "[T]he evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered." *LaBelle*, 107 Wn.2d at 206.

Here, the court found that S.J. suffered from a mental disorder that manifested severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, and that she would not receive, if released, such care as is essential for her health or safety. The findings of fact state that S.J. had 30 community hospitalizations and 4 prior Western State Hospital admissions. The court found that S.J. had a history of stopping her medication. In addition to her past issues, the findings of fact also detailed S.J.'s recent, severe manifestations of her mental disorder. The findings state that S.J. suffered from symptoms of psychosis including mood lability, and that she was exhibiting verbal aggression and abundant, detailed speech and tangential, delusional thinking. The findings further state that S.J.'s had impaired volitional control, S.J. had been provoking her peers, needed structure and would be unable to provide for her own health and safety.

These findings of facts prove that S.J. had recent, significant loss of cognitive or volitional control, and that involuntary commitment was essential to her individual health and safety because harmful consequences would likely follow otherwise. These findings of fact support a conclusion of gravely disabled under former RCW 71.05.020(22)(b).

13

No. 54860-7-II

### III. CONCLUSION

We hold that the superior court did not err in denying the motion for revision because the commissioner's findings of fact, as adopted by the trial court, were supported by sufficient evidence, and its conclusion that S.J. was gravely disabled under former RCW 71.05.020(22)(b) is supported by the findings of fact. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                         _____
                                         Worswick, J.

We concur:

_____
Lee, C.J.

_____
Cruser, J.

14