IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ANNA SHAMAYA JUAREZ, | ) | |
| | ) | No. 33668-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABDON CHAVEZ JUAREZ, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — This appeal asks the question of whether a trial court may enter

short-term domestic violence protection orders in deference to other judicial proceedings

on the expectation that a longer order will be entered in another proceeding. Based on

the language of RCW 26.50.025(2), we answer in the negative.

FACTS

This statement of facts arises primarily from the sworn petition of Anna Juarez,

wherein she seeks the entry of a domestic violence protection order. Anna Juarez and

respondent Abdon Juarez are married with three children aged 11, 4, and 3. During the

marriage, Abdon has repeatedly subjected Anna and the children to disturbing behavior.

Abdon's paranoia about Anna engaging in affairs with other men triggers the behavior.

On one occasion, Abdon angrily awoke Anna, in the middle of the night, and

accused her of an affair, even though she slept next to him. On another occasion, Abdon again awakened Anna, in the meridian of night, irately accused her of having an affair, and demanded she and the children move from the family home. On this second occasion, Abdon threatened to hurt Anna if she did not comply with his demand.

On one occasion, Abdon Juarez parked his vehicle up the street from the family home and sat in the car, while waiting for a friend to visit him. The friend arrived at the home, but Anna informed him that Abdon was not present. The friend left the home. Ten minutes later, Abdon entered the home and accused Anna of permitting his friend to stay overnight with her. Abdon ordered Anna to pack her belongings because he intended to sell the home. While Abdon accused Anna of an extramarital relationship with Abdon's friend, the friend sat in the passenger seat of Abdon's car.

During another alarming occasion, Abdon Juarez visited the home of a family member and accused Anna of an affair with his own brother. Abdon threatened to kill his brother and Anna. In a jealous rage, Abdon damaged the family member's residence.

Nothing in the record confirms the allegations of Anna's ever engaging in an extramarital affair. During the hearing on Anna's petition for a protection order, the trial court asked Abdon if he believed Anna participated in an affair, and Abdon replied no.

On one occasion, Abdon Juarez attempted to burn down the family home while Anna was away with the children. Abdon has attempted suicide. According to Anna, Abdon has become "mentally unstable" from drug use. Clerk's Papers (CP) at 8.

Abdon's and Anna Juarez's children have suffered from Abdon's disquieting behavior. In one instance, Abdon grabbed the oldest son by the face and bellowed: "I don't know who is downstairs with your mother, but it doesn't really matter." CP at 4. Abdon left his son in tears and drove from the home with the family's only working vehicle.

On another day, Abdon Juarez told his children he would rather be in jail than their mother lying to him about an extramarital affair. Abdon then questioned his children about who visits the family home while he is absent. Abdon informed his children that "[he] should disappear forever so they don't have to see him sick." CP at 6.

## PROCEDURE

Anna Juarez petitioned the superior court for a domestic violence order of protection. Anna requested that the order remain effective for longer than one year because of her belief that Abdon would resume domestic violence against her and the children on expiration of the order. The trial court granted a temporary order of protection on April 22, 2015, and scheduled a hearing for April 30, 2015. The court

3

reissued the temporary order several times and eventually conducted a hearing on June 11, 2015.

At the June 11 hearing, Anna Juarez described Abdon's acts of domestic violence and asked for a permanent restraining order. Abdon and his counsel appeared at the hearing. Counsel served Anna with marital dissolution pleadings, including a summons, dissolution petition, declaration in support of a parenting plan, parenting plan worksheets, and a motion for temporary orders. Abdon's attorney informed the trial court that the attorney anticipated an August hearing for preliminary orders in the marital dissolution case.

After briefly questioning the parties during the petition hearing, the trial court issued a sixty-five-day protection order that expired on August 15, 2015. The purpose of the short-term order was to maintain the "status quo until [the parties] can get into court for a hearing on the divorce." Report of Proceedings (RP) at 7. The trial court noted that "the divorce court [had] much—much more latitude . . . in terms of what they can do . . . to solve the overall problem." RP at 7. The protection order restrained Abdon Juarez from any contact with Anna Juarez and the three children. Nevertheless, the order allowed Abdon periodic visitation with his children, as long as Abdon's father retrieved and returned the children to the family residence. When entering the protection order, the trial court found: "Respondent [Abdon] committed domestic violence as defined in RCW

4

26.50.010 and represents a credible threat to the physical safety of Petitioner [Anna]."
CP at 21.

Anna Juarez submitted a motion for reconsideration on June 19, 2015. In denying the motion, the trial court explained: "The idea was that the parties would start a divorce and this case would be consolidated with the divorce. The family court can renew and extend the protection order if appropriate." CP at 44.

Abdon Juarez never scheduled a hearing in his marital dissolution proceeding. Abdon's attorney withdrew from the proceeding before August 2015.

## LAW AND ANALYSIS

### Facts on Appeal

Our dissenting brother writes as if the trial court entered no findings of fact. Our brother then impliedly criticizes us for relying on facts alleged by Anna Juarez in her petition for an order of domestic violence protection. Nevertheless, Anna signed the petition under oath and penalty of perjury. The petition functioned as a declaration. Anna repeated some of the testimony at the hearing. Although Abdon Juarez, at the hearing, denied the facts to which Anna swore in her petition, he filed no countervailing declaration. The trial court never commented that it did not believe Anna Juarez. After conducting a hearing, the trial court entered a finding that Abdon committed domestic violence.

5

Our dissenting brother questions the finding of domestic violence because the trial court conducted a short evidentiary hearing. Nevertheless, Abdon Juarez, who was represented by counsel at the hearing, never requested that the court take additional testimony. Abdon never requested an opportunity to cross-examine Anna Juarez.

Duration of Domestic Violence Prevention Order

Anna Juarez appeals the trial court's denial of a protection order longer than sixty-five days. The appeal requires a review of the language and purpose of the Domestic Violence Prevention Act.

The Domestic Violence Prevention Act, chapter 26.50 RCW, creates "an action known as a petition for an order for protection in cases of domestic violence." RCW 26.50.030. The operative section of the act, RCW 26.50.020(1)(a), provides:

> Any person may seek relief under this chapter by filing a petition with a court alleging that the person has been the victim of domestic violence committed by the respondent. The person may petition for relief on behalf of himself or herself and on behalf of minor family or household members.

Thus, Anna Juarez could file her petition for protection on behalf of herself and her children. The act covers domestic violence between family or household members:

> "Domestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

6

RCW 26.50.010(1).

RCW 26.50.060 authorizes the trial court, after notice and a hearing, to issue a protection order. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). RCW 26.50.060(2) dictates the possible duration for the domestic violence protection order. The statute reads, in relevant part:

> (2) *If a protection order restrains the respondent from contacting the respondent's minor children the restraint shall be for a fixed period not to exceed one year. . . .* With regard to other relief, if the petitioner has petitioned for relief on his or her own behalf or on behalf of the petitioner's family or household members or minor children, and the court finds that the respondent is likely to resume acts of domestic violence against the petitioner or the petitioner's family or household members or minor children when the order expires, the court may either grant relief for a fixed period or enter a permanent order of protection.
> If the petitioner has petitioned for relief on behalf of the respondent's minor children, the court shall advise the petitioner that if the petitioner wants to continue protection for a period beyond one year the petitioner may either petition for renewal pursuant to the provisions of this chapter or may seek relief pursuant to the provisions of chapter 26.09 or 26.26 RCW.
> (3) If the court grants an order for a fixed time period, the petitioner may apply for renewal of the order by filing a petition for renewal at any time within the three months before the order expires.
> . . . .
> (6) The court order shall specify the date the order expires if any.

RCW 26.50.060 (emphasis added). Since the protection order favoring Anna Juarez also restrained Abdon Juarez from contacting his minor children, Anna could obtain an order lasting one year, with the opportunity to renew the order before its expiration.

7

RCW 26.50.025(2), the relevant passage of the Domestic Violence Prevention Act

for purposes of this appeal, pronounces:

> If a party files an action under chapter 26.09, 26.10, or 26.26 RCW,
> an order issued previously under this chapter between the same parties may
> be consolidated by the court under that action and cause number. Any
> order issued under this chapter after consolidation shall contain the original
> cause number and the cause number of the action under chapter 26.09,
> 26.10, or 26.26 RCW. *Relief under this chapter shall not be denied or
> delayed on the grounds that the relief is available in another action.*

(Emphasis added.) The first sentence and second sentence of RCW 26.50.025(2)

references three other RCW chapters. Chapter 26.09 RCW concerns divorce

proceedings, chapter 26.10 RCW involves child custody contests, and chapter 26.26

RCW concerns parentage disputes. RCW 26.50.025(2) ends with the declaration that

"relief under [the Domestic Violence Prevention Act] shall not be denied or delayed on

the grounds that the relief is available in another action." RCW 26.50.025(2).

One may argue that the trial court did not deny or delay any relief to Anna Juarez

since Anna received an immediate remedy. She argues otherwise in that she wanted

lengthier relief. RCW 26.50.025(2) does not expressly preclude the trial court from

shortening the period of protection. Nevertheless, the tenor of RCW 26.50.025(2) directs

the trial court to reject other available proceedings and remedies as an influence on the

remedy granted in a Domestic Violence Prevention Act petition. Therefore, we hold that

denying lengthy protection, because of the availability of other relief or the pendency of

8

another court proceeding, runs contrary to RCW 26.50.025(2). Anna Juarez was denied the relief she sought and to which the statute declares she may be entitled. By not allowing the full one-year protection order, the trial court in essence denied partial relief. The trial court delayed the full relief requested by Anna.

This appeal asks us to construe RCW 26.50.025(2). The purpose of statutory interpretation is to effectuate the legislature's intent. *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). When determining the applicability of a statute, as in passing on the meaning of any legislative enactment, we look, in part, to the policy behind it. *In the Matter of the Estate of Hastings*, 88 Wn.2d 788, 793, 567 P.2d 200 (1977). The policy behind the Domestic Violence Prevention Act bolsters a conclusion that limiting the duration of the protection order in deference to a separate marital dissolution proceeding contradicts RCW 26.50.025(2).

In 1984, the legislature enacted the Domestic Violence Prevention Act, chapter 26.50 RCW, to provide domestic violence victims with the ability to obtain a civil protection order against their abusers. RCW 26.50.030. The legislature recognized protection orders as "a valuable tool to increase safety for victims and to hold batterers accountable." LAWS OF 1992, ch. 111, § 1. The legislature found that "domestic violence costs millions of dollars each year in the state of Washington for health care, absence from work, services to children, and more. The crisis is growing." LAWS OF

9

1992, ch. 111, § 1. "Domestic violence must be addressed more widely and more effectively in our state." LAWS OF 1992, ch. 111, § 1. Since 1984, the legislature has amended the domestic violence Prevention act several times to improve the protection order process "so that victims have . . . easy, quick, and effective access to the court system." LAWS OF 1992, ch. 111, § 1. Through its actions "the legislature has sought to further [prevent domestic violence] by taking clear, concrete actions to encourage domestic violence victims to end abuse, leave their abusers, protect their children, and cooperate with law enforcement and prosecution efforts to hold the abuser accountable." *Danny v. Laidlaw Transit Servs.*, 165 Wn.2d 200, 213, 193 P.3d 128 (2008).

Short-term protection orders in deference to other judicial proceedings require a victim of domestic violence to come to court multiple times to face her or his abuser. Prolonged court proceedings increase the risk of danger to a victim of domestic violence. Studies show an increased risk of homicide during extended divorce and child custody proceedings. Joan Zorza, *Recognizing and Protecting the Privacy and Confidentiality Needs of Battered Women*, 29 FAM. L.Q. 273, 290 (1995). Custody fights are "notoriously volatile." *Pike v. Maguire*, 47 Mass. App. Ct. 929, 716 N.E.2d 686, 688 (1999). Increased contact with an abuser may increase the risk of harm to the victim. *Champagne v. Champagne*, 429 Mass. 324, 708 N.E.2d 100, 102 n.2 (1999). Thus, short-term relief does not fulfill the legislative intent of Washington's Domestic Violence

10

Prevention Act to afford victims of domestic violence with a valuable instrument to increase safety for victims.

At least one other court has interpreted similar provisions of its state's domestic violence laws in a manner similar to our holding. *Parker v. Parker*, No. C-130658, 2014-Ohio-5516, 2014 WL 7177914 (Ct. App. Dec. 17, 2014) (unpublished). In *Parker*, Cherilyn Parker requested a five-year protection order from contact by her husband. The trial court, however, only entered a one-year order because Parker earlier instituted divorce proceedings. An Ohio domestic violence protection statute read that "[t]he remedies and procedures provided in this section are in addition to, and not in lieu of, any other available civil or criminal remedies," including divorce proceedings. OHIO REV. CODE ANN. § 3113.31(G). According to the appeals court, Parker should not have been denied a civil protection order of sufficient duration simply because she had concurrently sought other legal remedies to remove herself from the danger of domestic violence. The trial court's shortening of relief was an abuse of discretion since the decision was not based on sound legal reasoning.

*Parker v. Parker* is an unpublished case from the Ohio Court of Appeals. Washington GR 14.1(b) permits a citation to an unpublished decision from other jurisdictions if the decision can be cited to as authority in that jurisdiction. In Ohio, all appellate opinions issued after May 1, 2002 may be cited as legal authority and weighted

11

as deemed appropriate without regard to whether the opinion was published. OHIO REP. OP. R. 3.4 ("Use of Opinions").

The trial court holds discretion when entertaining petitions for domestic violence protection orders. *Hecker v. Cortinas*, 110 Wn. App. at 869 (2002). We will not disturb such an exercise of discretion on appeal absent a clear showing of abuse. *Hecker v. Cortinas*, 110 Wn. App. at 869. An abuse of discretion is found when a trial judge's decision is exercised on untenable grounds or for untenable reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). A trial court abuses its direction if its decision was reached by applying the wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

The trial court need not have granted Anna Juarez a one-year protection order if tenable grounds supported the refusal. Nevertheless, the trial court denied Anna Juarez's request for a one-year domestic violence protection order in order to maintain the status quo until the parties could conduct a hearing in the marital dissolution proceeding. This decision contradicted the language of RCW 26.50.025(2). Therefore, we hold that the trial court abused its discretion. The issuance of the short-term order exposed Anna to the potential for additional violence because she needed to return to court to repeatedly confront her abuser.

Our dissenting brother expresses concern that our ruling will make victims of

12

domestic violence less safe because experienced jurists lack prescience to know which party is truthful. He believes that, when faced with uncertain claims of domestic violence, trial courts would rather enter immediate, but limited, relief. He characterizes most domestic violence protection order petitions as uncertain claims. He predicts that, with our ruling, most trial courts will now deny any relief.

Our dissenting brother does not identify what he considers to be "uncertain claims." If he means, by "uncertain claims," a claim that the petitioner fails to prove at the hearing by a preponderance of the evidence, the trial court should deny relief anyway. If our brother means, by "uncertain claims," claims that the petitioner proves by a preponderance of evidence but fails to remove all doubt as to the claim's validity, nothing in the Domestic Violence Prevention Act empowers the trial court to shorten the duration of the relief because of some reasonable doubt.

Our brother's prediction of dire results depreciates the abilities and wisdom of Washington trial judges. We recognize the difficulty of a trial judge discerning the truth at a show cause hearing. Nevertheless, the law compels a judge to perform her or his best and to issue a ruling as to whether domestic violence occurred and protection is needed. Although we recognize our trial judges as being overworked with crowded dockets, we trust our judges to take the time and conduct a hearing sufficient to arrive at the truth. We believe our trial judges normally possess the ability to find the truth.

13

No. 33668-9-III
*Juarez v. Juarez*

An underlying assumption of the dissenting opinion may be that the trial court, during a martial dissolution suit, may be able to better arrive at the truth than the trial court during a Domestic Violence Prevention Act hearing. We may agree that the trial court, during a marriage dissolution hearing, may be able to fashion more comprehensive relief. Nevertheless, we disagree that the trial court may more ably arrive at the truth in a marital dissolution hearing than a domestic violence protection order hearing. The martial dissolution docket is as crowded as a domestic violence protection order docket. Our dissenting brother also fails to note that, if trial courts possess the predilection of granting immediate, but short-term relief in uncertain cases, the trial court is as likely to do so during the martial dissolution docket as during the domestic violence docket.

## CONCLUSION

We reverse the trial court's ruling denying Anna Juarez a longer term domestic violence protection order. We remand the case for further proceedings consistent with this opinion.

_____
Fearing, C.J.

I CONCUR:

_____
Pennell, J.

14

No. 33668-9-III

LAWRENCE-BERREY, J. (dissenting) — The issue is whether the trial court abused its discretion when it limited the domestic violence protection order to 65 days, a time shortly beyond when the parties could fully argue the issues in the dissolution proceeding. Because there was no abuse of discretion, I dissent.

The trial court has discretion when entertaining petitions for domestic violence protection orders. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). We will not disturb such an exercise of discretion absent a clear showing of abuse. *Id.* Discretion is abused only when no reasonable person would have decided the issue as the trial court did. *State v. Rice*, 110 Wn.2d 577, 600, 757 P.2d 889 (1988).

The majority sets forth its facts as if the trial court made explicit findings of fact. It did not. It signed the order of protection that contained a preprinted boilerplate finding that Abdon Juarez committed domestic violence and is a threat to Anna Juarez. The majority infers that the preprinted boilerplate finding sufficiently establishes that the trial court believed Ms. Juarez and disbelieved Mr. Juarez. The majority's position would be persuasive but for the fact that the trial court did not conduct an evidentiary hearing and, thus, had no basis to believe one party over the other.

Instead of an actual evidentiary hearing, each party spoke only a few sentences, addressing the allegations in the most perfunctory manner. Then Mr. Juarez's attorney spoke. Mr. Juarez's attorney suggested that the petition should be denied, and that a

judicial officer determine the appropriateness of protective orders and residential placement in approximately two months when temporary orders in the dissolution action could be fully considered. The trial court did not agree to this. Instead, the trial court's solution was to grant a short-term protective order until the matter could be fully heard in the dissolution proceeding. This solution left Ms. Juarez fully protected. Ms. Juarez did not object to this solution.

The trial court likely thought each party was satisfied with this solution. This would explain why it did not request the parties to address the specific allegations, allow the parties to cross-examine each other, or state its findings. It was not until Ms. Juarez moved for reconsideration that the trial court learned that she was dissatisfied with its solution.

But the majority has the benefit of hindsight and uses this benefit in its opinion. The majority notes that the temporary orders never were argued in the dissolution action. This fact was never brought to the trial court's attention. It is, therefore, improper for us to consider it on appeal. *Dioxin/Organochlorine Ctr. v. Dep't of Ecology*, 119 Wn.2d 761, 771, 837 P.2d 1007 (1992).

But rather than remand so the trial court can conduct an actual evidentiary hearing, consider the new evidence, state its findings, and possibly enter a one-year protection order, the majority announces a new rule: "[T]he tenor of RCW 26.50.025(2) directs the trial court to reject other available proceedings and remedies as an influence on the

2

remedy granted in a Domestic Violence Prevention Act petition." Majority at 8. This rule ignores the plain and unambiguous language of the statute.

RCW 26.50.025(2) provides in relevant part: "Relief under this chapter shall not be *denied or delayed* on the grounds that the relief is available in another action." (Emphasis added.) This language is plain and unambiguous. Here, the trial court did not deny or delay relief. Instead, it ordered immediate relief.

The majority's new rule goes beyond the statute. If the legislature intended the statute to mean what the majority says, it would have said so. But the legislature did not. Nor does the statute. There is no textual support for the majority's new rule.

I am concerned the majority's new rule will make victims of domestic violence less safe. Most domestic violence occurs in private, with proof limited to the testimonies of the parties. Even experienced jurists lack prescience to know which party is being truthful and which is not. When faced with uncertain claims of domestic violence—and most claims that lack at least one nonparty witness are uncertain—trial courts would rather enter immediate but limited relief. Now, faced with the choice of entering long-term relief in uncertain cases or denying relief, trial courts will probably deny relief. If so, the majority's new rule actually endangers victims of domestic violence.[1]

---

[1] Mr. Juarez did not participate in this appeal. We do not have the benefit of factual and legal counterarguments. In such a situation, appellate courts are more prone to err. For this reason, we should not be issuing a published opinion announcing a new rule of law.

3

No. 33668-9-III
*Juarez v. Juarez* (dissent)

In conclusion, RCW 26.50.025(2) is plain and unambiguous. It says what it says: "Relief under this chapter shall not be *denied or delayed* on the grounds that the relief is available in another action." RCW 26.50.025(2) (emphasis added). I would not interpret plain language as meaning anything other than what it says. Here, the trial court did not deny or delay Ms. Juarez relief. It provided Ms. Juarez immediate relief. When applying the plain language of the statute, it is evident that the trial court neither violated RCW 26.50.025(2) nor abused its wide discretion. I would affirm the trial court.

Lawrence-Berrey, J.

4