**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LINDSEY M. PURDY- BOLLAND, | ) | |
| | ) | No. 39184-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | TO PUBLISH AND |
| DANIEL PATRICK GRAHAM, | ) | AMENDING OPINION |
| | ) | |
| Appellant. | ) | |

THE COURT has considered the appellant's motion to publish the court's opinion of August 3, 2023, and the record and file herein, and is of the opinion the motion should be granted. Therefore,

IT IS ORDERED, the motion to publish is granted. The court also received, from a third party, a motion to publish the decision. That motion is observably granted also.

IT IS FURTHER ORDERED that the opinion filed by the court on August 3, 2023, shall be modified on page 1 to designate it is a published opinion and on page 13 by deletion of the following language:

> A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

and

> On page 4, second paragraph from the bottom, first line change "laying" to "lying."

PANEL: Judges Staab, Fearing, Siddoway

FOR THE COURT:

_____
GEORGE B. FEARING, Chief Judge

**FILED**
**AUGUST 3, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LINDSEY M. PURDY- BOLLAND, | ) | |
| | ) | No. 39184-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANIEL PATRICK GRAHAM, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — At the request of Lindsey Purdy-Bolland, the trial court entered an

order precluding contact between Daniel Graham and his young daughter because of the

father's photographing the daughter when the daughter was naked and being naked

himself in some images. Purdy-Bolland is the mother of Graham's daughter. The trial

court concluded that Graham was grooming the daughter for sexual abuse and that he

caused traumatic brain injury. We reverse because the trial court's finding of physical

abuse is not supported by substantial evidence.

FACTS

Lindsey Purdy-Bolland and Daniel Graham have a daughter together. The parties

refer to the daughter as "M." We generally refer to the daughter as "the daughter."

Purdy-Bolland and Graham have never been married. When the daughter was two years

old, Graham had a son, we reference as "Graham's son," with another woman, Allison

No. 39184-1-III,
*Purdy-Bolland v. Graham*

Beaty.  The daughter was 7 years old in November 2021.  By 2021, Daniel Graham maintained a relationship with a third woman, Crystal Hallen.

Daniel Graham took photographs and videos of his being naked, Crystal Hallen being naked, the daughter being naked, and Graham's son being naked.  Some of the images show Graham naked with one or more of his children.  Some of the photos show the daughter naked with other children.  The record contains thirteen of the photographs submitted by Lindsey Purdy-Bolland as support for her petition for a protection order.  These photographs were undated, but we know that two of them—identified as the eighth and ninth images below—were taken between 2020 and 2022.

The first, second, and third pictures appear to be from the same time period and must be several years old because the daughter is a toddler.  The three pictures depict Daniel Graham and his daughter, both of whom are naked, in a bathroom.  The first picture shows Daniel Graham taking a photograph of himself in the mirror while holding the daughter.  The second photograph shows Daniel Graham taking a picture of himself standing over the daughter in the bathtub.  Graham's genitals are visible but do not touch the daughter's body.  On this bathing occasion, Graham took four pictures of the daughter and himself, but Lindsey Purdy-Bolland submitted only one image with her petition.  *See* CP 11 and 153.  The third picture shows the daughter in the bathtub holding a bath toy and Daniel Graham sitting next to her.

The fourth picture portrays a young girl sitting on a kitchen counter.  She is wearing a dress and has her hand between her legs.  According to Daniel Graham, the girl

2

No. 39184-1-III,
*Purdy-Bolland v. Graham*

sitting on a counter in picture 4 is a friend's daughter. Graham took the photo when remodeling the friend's residence. Graham has been friends with the girl's father for fifteen years, her parents were home when he took the photograph, and the parents had no concerns about the picture when he showed the parents the image. He sent the photo to his girlfriend, Crystal, to update her on events of the day. Graham did not pose the girl and does not know why she sat on the counter. He was not aware of the location of the hand until Lindsey Purdy-Bolland criticized the hand's placement.

The fifth and sixth photographs depict young children naked in the bathtub. In one of Daniel Graham's declarations, he presented context for some of the photographs submitted by Lindsey Purdy-Bolland. Graham described photograph five:

> One photo submitted is of [the daughter] and her cousin . . . in the bathtub at my Mom's house where . . . , her brother and parents also live. I was in and out of the bathroom to check on them as one of the parents does often. I don't remember taking this photo but assume I just thought it was cute that they were playing and having fun so snapped a photo. I've never once been in the bathtub with my nieces or nephew or any other child other than my own. My Mom and sister ([the cousin's] mom) were home while the girls were bathing. Once again [the cousin's] parents have seen this photo and have no concerns.

Clerk's Papers (CP) at 104-05.

The seventh picture depicts Daniel Graham's foot in the bathtub next to the daughter, who is naked. The image only shows the adult foot, the leg attached to the foot, and the daughter's arm.

According to Daniel Graham, he shared image seven with his current girlfriend, Crystal Hallen, during a text conversation. Graham had intended to enter the bathtub to

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39184-1-III,
*Purdy-Bolland v. Graham*

bathe himself. Graham wrote to Hallen "She [the daughter] got in with me instead . . . . Butt head . . . . Haha." CP at 150. Hallen replied "Haha that's cute," and "She wanted to come in with you instead of her own bath." CP at 103-04, at 150. Graham responded "She loves coming with me but I tell her she can't . . . cause her mom. So we are in our undies." CP at 103-04, 150 (alterations in original). Graham did not tell the daughter she could not bathe with him because her mother did not allow it. Graham texted the statement and photograph only to Hallen.

Daniel Graham took the eighth and ninth image on the same occasion. The two photos show the daughter posing naked in the shower while being sprayed with water by Daniel Graham. According to Graham, he was then placing his son in bed, and went to and from the shower and the son's bed. He washed the daughter's hair so that the hair was thoroughly washed and rinsed. Graham rinsed the hair with the hand wand and jokingly sprayed the daughter. The daughter laughed. She asked her father to spray her face while photographing her. The daughter on other occasions asked to be photographed. Graham was outside the shower and clothed.

The tenth photograph depicts Daniel Graham and the daughter laying on a couch or bed. This photograph shows both Graham and the daughter naked from the chest up.

The eleventh image shows Daniel Graham taking a photograph of himself and the daughter. A smiling Graham and the daughter face the camera. The daughter stands naked in the bathtub, while Graham is clothed outside of the bathtub. Picture twelve shows a child, presumably the daughter, sitting naked and alone in the bathtub.

4

No. 39184-1-III,
*Purdy-Bolland v. Graham*

The thirteenth photograph depicts Daniel Graham in the bathtub with his daughter and son. All three are naked. Graham's genitals are visible but not touching either child.

In July 2019, Lindsey Purdy-Bolland told Daniel Graham to cease bathing naked with the daughter because of the daughter's increased age. Graham claims to have stopped bathing naked with his daughter then, but bathed with her while both wore bathing suits.

On Sunday October 24, 2021, the daughter returned to her mother's Kennewick residence after a visit with father Daniel Graham in Everett. The daughter possessed a tablet owned by her father. The mother, Lindsey Purdy-Bolland, scrolled through photos on the tablet and saw naked photos of Graham's current girlfriend, Crystal Hallen. The daughter looked over Purdy-Bolland's shoulder and commented: "'there are other photos of Crystal like that on dad's phone.'" CP at 9.

Lindsey Purdy-Bolland continued to thumb through the photos on Daniel Graham's tablet. She saw photos of children, including the daughter and Graham's son in the bathtub. On Graham's tablet, Purdy-Bolland also viewed a video of Graham with Graham's son both naked in the bathtub. Graham's son asked his father why the father had a hairy penis. Purdy-Bolland deemed the photos and video to be sexual in nature. Graham denied taking it for a sexual purpose.

Lindsey Purdy-Bolland showed the daughter's counselor the photographs and videos on Daniel Graham's tablet. The counselor reported the photographs and videos to Child Protective Services (CPS).

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39184-1-III,
*Purdy-Bolland v. Graham*

On October 27, 2021, the Everett Police Department received a CPS referral from Luis Medina at the Department of Children, Youth, and Families. On November 3, 2021, the police department assigned Sergeant Steve Brenneman to investigate the report.

During his investigation, Sergeant Steve Brenneman asked Lindsey Purdy-Bolland if she felt the pictures "were sexual" in nature. On more than one occasion, Purdy-Bolland responded that "she didn't know." CP at 342 (interview transcript). Sergeant Brenneman requested that Purdy-Bolland deliver Daniel Graham's tablet to him, but she refused.

On December 28, 2021, Sergeant Brenneman summarized his investigation, in part:

> When contacted by police, Mrs. Purdy provided a signed statement and sent 32 images and 2 videos of four children naked in the bath via an evidence.com link. Some of the images also showed [redacted] nude with [redacted] who were also naked in or near the bath.
> . . . .
> At the start of this investigation, I met with DPA [deputy prosecuting attorney] Boska and requested that he view the images with me to determine whether in his opinion they were inappropriate/criminal. Both DPA Boska and I felt that the images did not rise to the level of criminal activity. They did not appear to have been taken as a means for sexual gratification. Two of the photos were concerning due to the angle showing [redacted] between the legs and behind of a nude [redacted] who appeared to be exiting the bathtub when he took the selfie style image. However, his penis was not erect, and it did not seem to be done for sexual purposes.
> I met with Mrs. Purdy for an interview on 11-23-21. Mrs. Purdy provided a recorded statement. When asked if she felt the images were sexual, she stated that she didn't know and that was why she reported it. I contacted the parents of the other two children in the photos. The children were cousins to [redacted]. Neither mother had concern that the images of their children were sexual in nature and they stated that they would still allow [redacted] to watch their children. They said that [redacted] had already shown them the images, or they were present when they were

6

No. 39184-1-III,
*Purdy-Bolland v. Graham*

taken.  Both mothers said that [redacted] had sent bath time images to them documenting that the children were having fun playing together in the bath.

CP at 351.  The Snohomish County Prosecuting Attorney's Office declined to file charges against Daniel Graham.

Daniel Graham's son's mother, Allison Beaty, learned of the photographs and videos.  Beaty deemed the pictures inappropriate, but did not conclude that Graham sexually abused Graham's son.  Katherine Kelly, the mother of another child in the photos, stated that Graham sent her the photographs, she was not concerned about Graham watching her child, and would continue to allow the child to stay at his residence.  Graham's sister, Lisa Graham, has a child who was photographed by Graham.  Lisa told police investigators that she knew of the photographs and was probably present during some of the pictures.  Lisa Graham expressed concern about Lindsey Purdy-Bolland taking pictures of Lisa's daughter from Graham's tablet, which photos did not include the daughter, and show the photos to others.  Lisa expressed no concern about the images or her brother watching her child.

PROCEDURE

On October 28, 2021, before the Everett Police Department concluded its investigation, Lindsey Purdy-Bolland filed a petition for a domestic violence protection order, naming Daniel Graham as the respondent.  She identified herself and the daughter as the persons to be protected by the order.  When prompted by the petition form to describe the "most recent act, fear or threat of violence, and why the temporary order should be entered today without notice to [Graham]," Purdy-Bolland explained:

7

No. 39184-1-III,
*Purdy-Bolland v. Graham*

> On October 24, 2021, my daughter returned home after visitation with her father, Daniel Graham. She showed [sic] me the tablet she was playing with on the drive from Everett to Kennewick. I came across photos that she had access to on the tablet. They were disturbing and sexual in nature with my daughter and her half brother posing with Daniel, primarily in the bath tub. There was a video taken in July 2021 with Daniel and his son [sic] (5) in the bath tub prompting his son to ask him why "his penis was hairy." Another photo depicts Daniel standing naked with my daughter between his legs in the bath tub.

CP at 5.

The protection order petition form further prompted Lindsey Purdy-Bolland to

answer questions concerning her request for the protection order. We include the

relevant questions (bolded) and Purdy-Bolland's corresponding answers below.

> **Describe the past incidents where [the daughter] experienced violence, where [the daughter] was afraid of injury or where [Graham] threatened to harm or kill [the daughter]**: I have been suspicious of inappropriate sexual criminal behavior for years. There was a prior CPS incident reporting that Daniel was sleeping in the same bed with [the daughter] and girlfriends. In 2019 (June) I emailed Daniel and asked that he stop bathing with our daughter. He denied it.
> . . . .
> **Describe any violence or threats toward children**: Example of photos are included.
> . . . .
> **If you are requesting that the protection order lasts longer than one year, describe the reasons why**: The photos and video found were from over the course of many years. Odds of reoffending are high. Without serious and prolonged intervention, [Graham] could continue to harm my daughter. She has a long road ahead to recovering from the damage already having occurred.

CP at 5-8.

In a declaration responding to Lindsey Purdy-Bolland's petition, Daniel Graham

insisted that the photographs caused the daughter no emotional, physical, or mental harm.

8

No. 39184-1-III,
*Purdy-Bolland v. Graham*

Graham avowed that he has only ever shared the video and the pictures attached to the

petition "privately with family members." CP at 20.

On June 22, 2022, the Benton County Superior Court conducted a hearing on

Lindsey Purdy-Bolland's petition for the domestic violence protection order. On July 6,

2022, the trial court trial court granted the petition when issuing a letter ruling.

The superior court's ruling noted that the Washington Legislature overhauled the

law on civil protection orders and included new expansive definitions of what constitutes

"domestic violence." The legislation codified all of the law in chapter RCW 7.105. The

changes became effective on July 1, 2022. Based on the timing of events, the superior

court concluded that the former statutory provisions were applicable. The law defined

"domestic violence" in part as "physical harm, bodily injury, assault, or the infliction of

fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking."

Former RCW 26.50.010(3) (2021).

The trial court wrote in its memorandum decision:

> Here, the photos of the naked child [the daughter], taken by
> themselves and in light of other very concerning photos of other children in
> Respondent's possession and taken by the Respondent over a long period of
> time, show by a preponderance of evidence that there is domestic violence.
> The Court finds that the constant photographing of Respondent's child [the
> daughter] naked, encouraging the child to be photographed naked and to
> pose naked for photos, and the sharing of those photographs with third
> parties constitutes domestic violence because it is physical harm of the
> child by the Respondent by way of sexual grooming. Physical harm is not
> confined to harm that leaves an external mark; it can be mental and
> emotional abuse from a family member to another as well. Children who
> are being groomed for sexual activity or gratification by adults seldom
> know that what is happening is harmful to them, because the behavior is

9

No. 39184-1-III,
*Purdy-Bolland v. Graham*

> normalized by the adult doing the grooming and the children lack the
> capacity to understand that what is happening is wrong . . . .
>
> . . . .
>
> No parent would objectively view these images and think that they
> are harmless and normal in totality; *they are in fact causing physical harm
> to this child in the form of trauma to her brain from this attempted
> normalization at her sexual exploitation.*

CP at 202 (emphasis added).

The trial court's order precluded Daniel Graham from having contact with his

daughter except for professionally supervised visitation at his expense every other

weekend for up to four hours each weekend.

LAW AND ANALYSIS

On appeal, Daniel Graham asserts two principal arguments in favor of vacating the

protection order precluding contact with his daughter. First, the underlying facts show no

physical harm to the daughter and thus did not justify a protection order for domestic

violence. Second, in granting the petition, the trial court violated Graham's fundamental

right to raise his child how he sees fit. Because we agree with Graham's first argument,

we do not address the second contention.

Trial courts exercise discretion in deciding whether to grant or deny petitions for

domestic violence protection orders. *Juarez v. Juarez*, 195 Wn. App. 880, 892, 382 P.3d

13 (2016). Hence, this court reviews such decisions for an abuse of discretion and will

not disturb such an exercise of discretion absent a clear showing of abuse. *Rodriguez v.

Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017); *Juarez v. Juarez*, 195 Wn. App. 880,

893 (2016). An abuse of discretion exists when a trial court's exercise of its discretion is

10

No. 39184-1-III,
*Purdy-Bolland v. Graham*

manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126

Wn.2d 244, 258, 893 P.2d 615 (1995). A court's decision is based on untenable grounds

if the factual findings are unsupported by the record. *In re Marriage of Littlefield*, 133

Wn.2d 39, 47, 940 P.2d 1362 (1997).

The parties follow the lead of the trial court in litigating this appeal on the basis of

the former definition of "domestic violence" under chapter 26.50 RCW. We do so also.

The former RCW 26.50.010(3) defined domestic violence as:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of
> imminent physical harm, bodily injury or assault, sexual assault, or stalking
> as defined in RCW 9A.46.110 of one intimate partner by another intimate
> partner; or *(b) physical harm, bodily injury, assault, or the infliction of fear
> of imminent physical harm, bodily injury or assault, sexual assault, or
> stalking as defined in RCW 9A.46.110 of one family or household member
> by another family or household member*.

(Emphasis added.) The facts supporting a protection order must reasonably relate to

physical harm, bodily injury, assault, or the fear of imminent harm. *In re Marriage of*

*Freeman*, 169 Wn.2d 664, 674, 239 P.3d 557 (2010).

The Washington Legislature did not define "physical harm" as the term was used

in the former RCW 26.50. Nevertheless, plain language requires no construction. *State*

*v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). When this court interprets

statutory language, it assumes that the legislature means exactly what it says and does not

perform statutory interpretation when the meaning of a statute is unambiguous. *City of*

*Snohomish v. Joslin*, 9 Wn. App. 495, 498, 513 P.2d 293 (1973); *In re Petition for an*

*Order for Protection of K.G.T.*, 16 Wn. App. 2d 787, 791, 483 P.3d 808 (2021). The

11

No. 39184-1-III,
*Purdy-Bolland v. Graham*

term physical harm is unambiguous because it has only one meaning: harm inflicted on one's physical body.

We proceed to determine if the underlying facts support an ultimate finding of fact that Daniel Graham committed domestic violence. The trial court entered the protection order based on findings that Graham groomed his daughter, took photographs for sexual gratification, and caused traumatic brain injury. Because former RCW 26.50.010(3) only mentions physical harm and not sexual grooming or gratification, we only analyze whether the underlying facts show physical harm. Traumatic brain injury would qualify as physical harm.

The trial court cited only the content of the photographs, their frequency, and their disbursement as evidence the daughter suffered trauma to her brain. The trial court did not consider, nor did either party submit, medical records proving the existence of brain trauma. While the court had access to some of the daughter's medical records, those records did not indicate she suffered brain trauma. Neither party retained an expert to provide an opinion on brain trauma that could result from circumstances similar to those present here. Thus, we conclude that the facts do not support a finding of physical harm.

We recognize that the Supreme Court, in *Rodriguez v. Zavala*, 188 Wn.2d 586, (2017), determined a child's fear of observing violence against a family member to constitute physical harm for purposes of the former RCW 26.50.010(3). Nevertheless, the statute extended to an imminent fear of physical harm, and the child might reasonably worry that violence to his mother could eventually reach him. More importantly, the

12

No. 39184-1-III,
*Purdy-Bolland v. Graham*

Supreme Court, in *Rodriguez v. Zavala*, relied on a wealth of literature that cited studies that domestic violence in a child's home, regardless of whether the violence physically touches the child, impacted the child's brain development. Neither party cites to any scientific literature or studies that related traumatic brain injury to be photographed naked even with one's parent being naked nearby. The trial court cited no studies or literature.

CONCLUSION

We reverse the trial court and remand for the vacation of the protection order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, J.P.T.*

_____
Fearing, C.J.

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

13