**FILED**
**SEPTEMBER 12, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JASMINE M. ACOSTA, | ) | No. 38890-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRYON K. MCQUAID, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Jasmine Acosta appeals a domestic violence protection order

(DVPO) that failed to include her three-year-old daughter, K.M., as a protected party.

Ms. Acosta correctly points out that the trial court's disposition violated the plain terms

of applicable statutes because the court provided no written explanation for excluding

K.M., and because it appears K.M.'s omission from the DVPO was motivated by the

possibility of a separate action for a parenting plan. The trial court's deviation from

statutory requirements constituted an abuse of discretion. We therefore remand for further

proceedings.

FACTS

On March 24, 2022, Jasmine Acosta filed a petition in Grant County Superior Court, seeking protection for herself and her three-year-old daughter, K.M.  Ms. Acosta's petition alleged she was a victim of domestic violence committed by her boyfriend, Bryon McQuaid, who is also K.M.'s father. K.M. lived with Ms. Acosta at the time of the petition.

Ms. Acosta sought an order that, among other things, would restrain Mr. McQuaid from physically harming, surveilling, or following her or K.M.  Ms. Acosta also asked the court to prohibit Mr. McQuaid from having any contact with her or K.M., and to forbid him from coming within 1,000 feet of her residence, workplace, or K.M.'s daycare. Ms. Acosta requested sole custody and control of K.M. and that Mr. McQuaid be restrained from interfering with the same. Ms. Acosta also requested Mr. McQuaid be ordered to participate in treatment or counseling, and that any order of protection remain in place for over a year. Ms. Acosta explained she gravely feared physical harm or death might occur if a temporary order was not granted prior to giving notice of the DVPO petition to Mr. McQuaid.

Ms. Acosta supported her petition with specific allegations. She asserted Mr. McQuaid was under investigation in Spokane County for "thr[owing] [her] to the floor

2

and into the wall." Clerk's Papers (CP) at 5. "He then muzzled and chocked [sic] me with both hands and banged my head into the floor while he was on top of me." *Id.* Ms. Acosta further explained that the couple's dog attempted to get between her and Mr. McQuaid, prompting Mr. McQuaid to throw the dog across the room. Ms. Acosta alleged that "[a]ll of this was in front of [K.M.]." *Id.*

Ms. Acosta's petition described another incident, on March 7, 2022, during which Mr. McQuaid became physical with and frightened K.M. Ms. Acosta wrote:

> [Mr. McQuaid] was upset that [K.M.] wanted me to read to her and not him. I went to get her milk and when I came around the corner I saw our daughter above [Mr. McQuaid's] head being slammed down on to her bed. He then stormed out of her room and shoved me out of his way. My daughter was crying hysterically and couldn't catch her breath. He tried to apologize to her but she was trying to tell him she was scared. He threatened to "leaver [sic] her and never come back" if she didn't let him read her a book.

*Id.* at 6.

Ms. Acosta described another incident, from October 2021, in which Mr. McQuaid "shoved [her] around and started throwing objects around the house. He scared me and our daughter." *Id.* at 5.

Ms. Acosta alleged another incident, from November 2018, in which Mr. McQuaid shoved her into a wall and their child's playpen. He yelled at Ms. Acosta and frightened her to the point that she wet herself.

3

Ms. Acosta's petition generally described Mr. McQuaid as having a labile mood. According to Ms. Acosta, Mr. McQuaid would frequently fly into terrifying fits of rage. Ms. Acosta quoted Mr. McQuaid as threatening to "'cut [her] and [her] parents into a bunch of pieces and bury [them] in the backyard'" if she ever left him with their daughter. Ms. Acosta alleged that Mr. McQuaid had destroyed two of her cellphones in the past due to his jealous belief that she was communicating with other men.

The superior court granted Ms. Acosta a temporary order of protection the same day she filed her petition and set a hearing on the petition for twelve days later. Mr. McQuaid was served with the DVPO petition and temporary order on March 25, the day following the preliminary hearing. The temporary order granted Ms. Acosta's requested relief as to herself, but not as to K.M.

At the April 5 hearing on the petition, Ms. Acosta and Mr. McQuaid each appeared pro se. The superior court first asked the parties if they had an extant parenting plan, to which they responded that they did not. The court then asked Mr. McQuaid if he was opposed to the entry of a protection order as requested by Ms. Acosta. Mr. McQuaid explained that he had no desire to communicate with Ms. Acosta, and thus he was mostly unopposed; however, he wanted to be able to communicate with Ms. Acosta for the limited purpose of arranging for him to see K.M.

The superior court asked Ms. Acosta how she would feel about the entry of a

protection order that would allow Mr. McQuaid to contact her only for the purposes of

arranging visitation. Ms. Acosta responded, "I would feel uncomfortable." Rep. of Proc.

(RP) (Apr. 5, 2022) at 6. The superior court responded:

> THE COURT: Okay. All right. So I guess . . . again, I'm not trying to
> be difficult, but you need a parenting plan, don't you?
> MS. ACOSTA: Right.
> THE COURT: I mean, right now, as the child's father, Mr. McQuaid
> has as much right to custody and to be with her as you have.
> MS. ACOSTA: Okay. After this incident I witnessed, I fear for her
> safety.
> THE COURT: Okay. So the temporary order . . . doesn't say anything
> about [K.M.], okay? I'm limited—the relief I can grant you is solely limited
> to the—in my opinion—well, I shouldn't say that. I'm not inclined to
> expand the provisions of the plan.
> . . . [Y]ou can testify if you want to, but you're going to have to
> convince me why I should tell Mr. McQuaid that he can't see his daughter.
> Do you want to do that?

*Id.* at 6-7. Ms. Acosta agreed, was sworn in, and testified under oath.

In her testimony, Ms. Acosta reiterated the numerous incidents of domestic

violence alleged in her petition. Her testimony included a description of the incident

in which Mr. McQuaid "slammed [K.M.] down onto her bed" and threatened to

"'leave [her] and never come back.'" *Id.* at 8. Ms. Acosta testified she fled Spokane

County for Grant County with K.M. to get away from Mr. McQuaid. Ms. Acosta testified

Mr. McQuaid had an active charge of fourth degree assault in Spokane County as a result

5

of his actions toward her.

The court turned to Mr. McQuaid and asked him if he had been charged with assault in Spokane; Mr. McQuaid agreed he had, and said that he had a lawyer in that case. The court asked Mr. McQuaid, "knowing that you have no obligation to speak to me and that your testimony today could be used against you in the criminal case, do you want to tell me your side of the story?" *Id*. at 12. Mr. McQuaid responded that he did not want to testify at the DVPO hearing.

The court proceeded to its ruling. The court granted Ms. Acosta the protection she requested for a period of a year, as to herself, but did not include K.M. in the order of protection. The court ordered Mr. McQuaid not to have any contact with Ms. Acosta "except for purposes of arranging visitation with [K.M.] or as provided for in a validly entered parenting plan." *Id*. at 14. The court granted Ms. Acosta temporary care, custody, and control of K.M., and commented:

> THE COURT: . . . I'm not giving you two legal advice, but you need to get a parenting plan in place immediately.
> . . . [A]nd the [protection] order, Mr. McQuaid, does not prohibit you from having contact with [K.M.], but that's going to be taken care of in Family Law Court, all right? So somebody's got to get in and file a petition there. . . .
> . . . .
> [Y]ou can do that by approaching here in our clerk's office. . . . I don't know if you can file it in Spokane. You can try.

6

> But I think, [Ms.] Acosta, you could come down to the clerk's office and I think the clerk's office will provide you with the paperwork for starting that process.

*Id.* at 15.

The court entered its written DVPO protecting Ms. Acosta—but not K.M.—the same day. The order restrained Mr. McQuaid from having any contact with Ms. Acosta "except for purposes of arranging visitation with [K.M.] or as provided in a validly entered parenting plan." CP at 25. Ms. Acosta was granted temporary care, custody, and control of K.M., "subject to any subsequently entered custody order in [a] family law case." *Id.* at 26.

Neither the court's oral ruling nor the written order explains why Ms. Acosta's request to include K.M. as a protected party was rejected.

Ms. Acosta filed a timely appeal, alleging the superior court abused its discretion in failing to include K.M. as a protected party. Although the order was set to expire on April 5, 2023, during the pendency of this appeal, in a supplemental brief Ms. Acosta explained the DVPO was renewed for an additional year. Mr. McQuaid does not disagree.

## ANALYSIS

An individual may petition for a DVPO on behalf of themselves or on behalf of minor members of their household or family. *See* former RCW 26.50.020(1)(a) (2010);

7

*see also* RCW 7.105.100(1)(a).[1] Trial courts are authorized to provide relief in the form

of a DVPO if a petitioner shows by a preponderance of the evidence that "domestic

violence" occurred. *Davis v. Arledge*, ___ Wn. App. 2d ___, 531 P.3d 792, 798 (2023);

*see* former RCW 26.50.060(1) (2020); former RCW 26.50.030(1) (2005); *see also*

RCW 7.105.310(1), .100(1)(a). As relevant here, "domestic violence" includes physical

harm, bodily injury, or assault—or the infliction of fear that any of those harms are

imminent—by an individual against one of their household or family members. Former

RCW 26.50.010(3) (2019); *see* RCW 7.105.010(9).

The superior court's failure to include K.M. in the DVPO constituted a "denial" of

the full relief Ms. Acosta requested. *See Maldonado v. Maldonado*, 197 Wn. App. 779,

790, 391 P.3d 546 (2017). Such a denial is reviewed for abuse of discretion. *Rodriguez v.*

*Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). A trial court abuses its discretion

if its decision is based on untenable grounds or reasons, or is otherwise manifestly

---

[1] In 2021, the legislature repealed chapter 26.50 RCW, recodified certain sections of that former statute, and enacted other statutory provisions governing access to civil protection orders, effective July 1, 2022. *See* LAWS OF 2021, ch. 215; *see also* LAWS OF 2022, ch. 268 (making additional changes to the new statutory scheme). Because Ms. Acosta's petition and the trial court's ruling on it preceded this effective date, we cite to former chapter 26.50 RCW, which was in effect at the time of the superior court's ruling. DVPOs are now addressed in chapter 7.105 RCW. This decision additionally cites to comparable provisions in that updated chapter.

unreasonable. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

A decision based "on an erroneous view of the law" is necessarily an abuse of discretion.

*Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 143 P.3d 1196 (2006).

The trial court committed two significant legal errors in this case, both of which

undermine the validity of its disposition as to K.M. We address each in turn.

First, the trial court failed to explain in writing why it rejected Ms. Acosta's

request to include K.M. in the order of protection. This was contrary to former

RCW 26.50.060(7) (1995): "If the court declines to issue an order for protection . . .

the court *shall* state in writing on the order the particular reasons for the court's denial."

(Emphasis added); *see also Maldonado*, 197 Wn. App. at 790. It is also contrary to

the current governing statute. *See* RCW 7.105.225(5).

Second, the superior court's oral comments suggest it denied K.M. protection out

of deference to the possibility of a subsequently entered parenting plan. But an applicable

statute precluded such deference, stating a DVPO "shall not be denied or delayed on the

grounds that the relief is available in another action." Former RCW 26.50.025(2) (2019).

The current statute contains the same prohibition. *See* RCW 7.105.225(2)(d). As we

have previously explained, trial courts must totally "reject" the availability of other

9

proceedings "as an influence" on the remedy granted in response to a petition for a

DVPO. *Juarez v. Juarez*, 195 Wn. App. 880, 888, 891, 382 P.3d 13 (2016); *see also*

*Maldonado*, 197 Wn. App. at 795-76.

Based on the foregoing legal errors, the superior court abused its discretion.

Remand is therefore required. On remand, the superior court shall consider the merits

of the petition for protection and evaluate Ms. Acosta's proffered allegations. *See*

*Maldonado*, 197 Wn. App. at 791 (reversing and remanding where some of petitioner's

allegations "were neither acknowledged [n]or addressed"). If the court continues to deny

protection for K.M., it shall provide written reasons for its denial. *See* RCW 7.105.225(5);

*Maldonado*, 197 Wn. App. at 790. Our decision does not dictate the superior court's

ultimate disposition. *See* RCW 7.105.310(1) (giving trial courts "broad discretion" to

grant relief). But given a protection order has been granted as to Ms. Acosta, the superior

court shall keep in mind that direct and indirect exposure to domestic violence in the

home is a form of harm that qualifies for protection under a DVPO. *See Rodriguez*,

188 Wn.2d at 598.[2]

---

[2] Ms. Acosta also alleged that Mr. McQuaid assaulted K.M. and inflicted fear of imminent physical harm to her, allegations that, if credited by the superior court, would also warrant an order of protection that includes K.M. *See* RCW 7.105.010(9).

No. 38890-5-III
*Acosta v. McQuaid*

## CONCLUSION

The trial court abused its discretion in failing to provide a written explanation of why K.M. was excluded from the order of protection and in suggesting it could deny protection of K.M. because of the availability of relief in family court. This matter is remanded for further proceedings consistent with the terms of this decision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, J.

_____
Cooney, J.

11