FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 FEB 13 AM 9: 26

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOSE MALDONADO, | No. 75146-8-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| NOEMI (LUCERO) MALDONADO, | PUBLISHED OPINION |
| Respondent. | FILED: February 13, 2017 |

BECKER, J. — Appellant petitioned the superior court for a domestic violence protection order to limit his ex-wife's contact with their three minor children for a year or more and to restrain her from harming them. The court granted protection only for the child who had a visible bruise, and only for four months. The court ruled that imposing additional restrictions would amount to a "back door modification" of the parenting plan.

The court abused its discretion in two ways: by failing to state in writing the particular reasons why the other two children were not included in the protection order and by denying protection on the basis that relief could be obtained in another type of action. The order is reversed and remanded for reconsideration in light of this opinion.

## FACTS

The marriage between appellant Jose Maldonado and respondent Noemi Lucero, formerly Noemi Maldonado, was dissolved in Snohomish County Superior Court in October 2015. At that time, their children—two daughters, ages 14 and 9, and a 6-year-old son—were living with Jose in south King County and attending school there. Noemi's residence is in Snohomish County. The couple had been separated for five years. At some point during the separation, the two daughters were assaulted by a third party; Noemi does not dispute Jose's allegation that these were sexual assaults by Noemi's then-boyfriend. Noemi's contact with the children was limited for a period of time to professionally supervised visitation. No such restriction is contained in the parenting plan entered on October 14, 2015. Under the terms of the parenting plan, the children continue to live with Jose, except for every other weekend and certain holidays and vacations with Noemi.

On Saturday, November 21, 2015, the children were with Noemi for the weekend. On the following Monday, a school staff member reported to Child Protective Services (CPS) a disclosure made by the nine-year-old daughter, NL.

> On 11/23/15 [NL] disclosed to a school staff member that on 11/21/15 she went to the store with her mom, her siblings and mom's boyfriend. She needed to go to the bathroom and asked if she could go. Mom told her to hurry, but [NL] apparently took too long. When she got back from the bathroom Mom pushed her to the ground at the store. When they got home Mom pinched her on her upper right bicep which left a bruise (2-inches, purple). Her mom also hit her with a belt multiple times on her back and her leg which left a bruise on her upper right thigh. She said that mom also hit her little brother with a belt and her big sister with a flip-flop.

In a space provided to "describe prior abuse/neglect or historical concerns," the staff member reported,

> Mom lost custody of her children for a number of years because her former boyfriend sexually assaulted [NL]. Mom only very recently gained unsupervised visitation rights of the children. Previously a restraining order was in place and visits were supervised only.

Police were contacted. On November 24, 2015, Jose took NL to a doctor. The doctor documented a bruise on NL's arm.

On December 18, 2015, Jose petitioned in King County Superior Court for a domestic violence protection order protecting the children under chapter 26.50 RCW, the Domestic Violence Prevention Act. The petition listed the cause numbers of two previous protection order proceedings involving the family: a protection order in Snohomish County in 2012 and a temporary order in King County in 2013. The petition requested an order restraining Noemi from causing any physical harm to the children, from harassing or threatening them, and from contacting them except through court-ordered visitation.

The standard petition form provides space to describe specific acts of domestic violence, with their approximate dates. Jose's petition alleged that Noemi physically assaulted the children on November 21, 2015. He attached the school district report and the doctor's note. He alleged that during her next weekend with the children, Noemi reprimanded NL and threatened her with punishment for reporting that she and her siblings had been hit.

In the space provided for a description of past incidents involving violence, fear of injury, or threats of harm by the respondent, Jose alleged that Noemi "has repeatedly subjected my children to abuse (by her boyfriend, herself) and

3

neglect. CPS has previously been involved and she lost custody of the children after both of my daughters were sexually assaulted by her boyfriend." He asserted that Noemi "presented an ongoing threat to the physical and emotional/psychological well-being of the children for several years, necessitating supervised visits until recently."

The petition requested an ex parte emergency temporary order (RCW 26.50.070) pending a hearing. Jose alleged that immediate protection was necessary because the children "will be subjected to psychological and physical harm or danger of harm during home visits with their mother" and that they "are afraid of what will happen to them during these visits."

Jose signed the petition and certified under penalty of perjury that his allegations were true and correct.

A court commissioner issued a temporary protection order including all three children as protected parties. The court instructed Family Court Services to get a status update from CPS. The temporary order was reissued three times, twice because the court was waiting for the update and once for Jose to seek legal advice. The temporary orders required professional supervision for Noemi's visits with the children and prohibited the parties from discussing any court case or the other parent in the presence of the children.

Noemi filed with the court two letters she had received from CPS concerning an investigation into a report received by CPS in March 2012 alleging negligent treatment by Noemi of the two daughters. The first letter was dated August 14, 2012. It stated that the resulting investigation showed the allegation

to be "Founded." The second letter was dated October 11, 2012. It stated that in an administrative review requested by Noemi, the finding was changed to "Unfounded." Details of the alleged negligent treatment are not included.

A social worker with Family Court Services filed a status update with information obtained from a CPS supervisor. According to this two-paragraph document, the most recent referral to CPS was the one received from NL's school on November 23, 2015. CPS classified the referral as "Physical Assault/or Unreasonable/immoderate corporal punishment." A CPS social worker interviewed the children. "[NL's] reports remained similar but her older sibling reported that the mother attempted to talk to [NL] when she was being disrespectful." In the screening process used by CPS, "no safety threats were identified." The CPS supervisor reported there was "a previous finding for Neglect against the mother."

On March 4, 2016, a court commissioner held a hearing on the petition. Jose and Noemi appeared without counsel. A Spanish language interpreter was present for Jose. The transcript states that all questions and answers to and from Jose were translated by the interpreter, and all answers given were through the interpreter.

The commissioner first ascertained that both parties had the opportunity to review the CPS status update from Family Court Services. After swearing in both parties, the commissioner asked Jose if the facts in his petition and in his declaration were true and correct. Jose testified that they were. He presented a photograph of NL's bruise taken the day after the incident at the store.

The commissioner then said to Noemi, "So, ma'am, I need to hear from you. What happened and how did your daughter get the bruise?" Noemi testified that NL had a tantrum during a shopping trip when her request to buy toys was refused "and she started biting me, trying to kick me; so we left, and we went home. . . . And then I hit her on her behind with the belt. But on the bruise, I don't know how she got that." The commissioner reviewed the parenting plan and confirmed with Noemi that the children resided primarily with Jose.

The commissioner asked Jose if there was "anything else you want me to know?" Jose testified that Noemi had not tried to exercise her right to supervised visitation under the temporary orders and had contacted the older daughter about going to California for vacation. The commissioner told him that the only matter before the court was whether Noemi had abused NL:

> THE COURT: So let me ask you a question. *The only evidence that I have before me is the allegation regarding abuse of the 9-year old [NL], correct?*
> MR. MALDONADO: Yes.
> THE COURT: Okay.
> MR. MALDONADO: There's a—injustices that have happened with my two daughters—with all three children—
> THE COURT: *I don't have any evidence of any abuse regarding the other children. The only allegations that I have involve [NL]* . . . .
> MR. MALDONADO: I wanted to report the sexual abuse against my daughters. . . . I have papers here from when my daughters were sexually abused.
> THE COURT: Sir, the only petition I have before me is a petition for domestic violence-protection order that was filed on December 17th, 2015, and *the only allegations contained in the petition concern [NL].*
> At this point I can't let you amend your petition in that almost three months has gone by.
> MR. MALDONADO: Okay. That's fine.
> THE COURT: And I'm going to rule on *the issue that is properly before me, which is the allegations regarding [NL].*

6

> Anything else from you?
> MS. [MALDONADO]: No.

(Emphasis added.)

The court ruled that protection could not be granted for the other two children because there were no allegations concerning them:

> THE COURT: This is a petition for a domestic violence-protection order brought on behalf of three minors. *Again, the only allegation brought before me involves one minor, 9-year-old [NL]. There are no other allegations that are brought before me* regarding the 14-year-old or the 6-year-old; therefore the Court cannot grant and will not grant a protection order for the 14-year-old or the 6-year-old. I'm striking them from this protection order.

(Emphasis added.) In the oral ruling, the court found that Noemi inflicted the bruise on NL while disciplining her and concluded that because inflicting a bruise was not reasonable discipline under RCW 9A.16.100, Noemi's act constituted domestic violence as to NL; hence, a protection order would be issued for NL. The order would expire in four months. The commissioner did not consider imposing any form of restraint on Noemi's treatment of NL's siblings. The commissioner said to Jose, "Sir, you need to file a petition to modify the parenting plan if you want to look into other protections for the other children."

The standard form protection order issued that day lists only NL as a protected party and has an expiration date of July 5, 2016. The order contains the preprinted finding "Respondent committed domestic violence as defined in RCW 26.50.010." A box is checked for the preprinted finding "Respondent represents a credible threat to the physical safety of the protected person/s." There are no other written findings. The order provides in handwriting,

7

"Respondent may have professionally supervised visits with [NL] every Sunday up to two hours. Subject to family law modification action." The order directs Noemi to participate in parenting classes.

Jose obtained counsel and moved for revision. He objected to the other two children being left unprotected, citing In re Marriage of Stewart, 133 Wn. App. 545, 137 P.3d 25 (2006), review denied, 160 Wn.2d 1011 (2007). "Even if we look only to the single incident where only one of the children was assaulted, this does not mean that the other children were not victims of the abuse, too. Children who witness domestic violence and fear for the victim are psychologically harmed by the violence and entitled to protection." Jose also argued that the commissioner acted contrary to RCW 26.50.025(2) by ruling he would have to petition to modify the parenting plan if he wanted broader relief:

> By denying a longer-term order, the court has essentially given him a four-month deadline to file a parenting plan modification, serve the other party, establish adequate cause, and get a new parenting plan or restraining order entered. If he is unable to do so by the deadline, then his children will lose the protection of this court, and everything will go back to the way it was as if the Respondent never assaulted her child. This brings up the distinct possibility that the Respondent can prevail simply through attrition.

Noemi, through counsel, argued for vacation of the order on the ground that her own testimony about the incident was contradicted only by uncorroborated hearsay. She also argued that Jose was improperly using a protection order petition to "side-step the modification statutes" for his own convenience.

On March 29, 2016, the parties presented their arguments in a hearing before a superior court judge. The court accepted the commissioner's exclusive focus on NL:

> When the father wanted to bring in more information about the other children—[the commissioner] said, what's in front of me just involves [NL]; it doesn't involve any of the other children, so that's a separate action.
>
> So here the only child that the commissioner concluded received unreasonable punishment was [NL]. It is also noted the family has had a somewhat complicated history together, and their [dissolution] . . . was finally resolved in the fall of 2015, and a final parenting plan was entered in Snohomish County.

The court adopted Noemi's argument that granting protection for all three children for a year would frustrate the parenting plan:

> So the father believes that the DVPO [domestic violence protection order] should have listed all three children and should have been for a full year's duration, but the problem with this calculation is that that's a back door modification of a parenting plan and is contrary to the statute. Modification of a parenting plan requires specific statutory steps including a hearing to establish adequate cause.
>
> It is completely proper under the circumstances, when there is a parenting plan in place—regarding the children and all the parties are affected by the decision that the commissioner makes—to not extend it to a point that would, by its language contained in the order, impact the dynamics of the parenting plan.
>
> Here the commissioner did set some safeguards for the short-term—four months is plenty of time for someone to get something going if they wanted to modify the parenting plan; and also directed, if you wanted additional restrictions, you know, that was his avenue which was appropriate.

Jose appeals from the order denying revision.

Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court. A revision denial constitutes an adoption of the commissioner's decision, and the

9

court is not required to enter separate findings and conclusions. In re Marriage of Williams, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010). On appeal, this court reviews the superior court's ruling, not the commissioner's. Stewart, 133 Wn. App. at 550.

The decision to grant or deny a domestic violence protection order is reviewed for an abuse of discretion. Stewart, 133 Wn. App. at 550; Juarez v. Juarez, 195 Wn. App. 880, 890, 382 P.3d 13 (2016). An abuse of discretion is found when a trial judge's decision is exercised on untenable grounds or for untenable reasons, or if its decision was reached by applying the wrong legal standard. Juarez, 195 Wn. App. at 890.

## MOTION TO DISMISS

Noemi moves to dismiss Jose's appeal as moot. She alleges that Jose moved unsuccessfully to renew the King County protection order in August 2016 and that an action to modify the parenting plan is pending in Snohomish County. She moves to supplement the record with the order and relevant pleadings from the renewal hearing last August.

A case is moot if a court can no longer provide effective relief. Blackmon v. Blackmon, 155 Wn. App. 715, 719, 230 P.3d 233 (2010). Jose requested a protection order of at least one year. Because it is not too late for the trial court to grant the relief requested by Jose, his appeal is not moot. Noemi's motion to dismiss the appeal is denied.[1]

---

[1] Noemi's motion to supplement the record is denied because the record is sufficiently complete to permit a decision on the merits of the issues presented for review. RAP 9.10. We do not consider the portions of Noemi's brief that refer

## EXCLUSION OF SIBLINGS FROM THE PROTECTION ORDER

Jose contends the court erred in excluding NL's two siblings from the protection order without stating reasons for doing so.

"If the court declines to issue an order for protection or declines to renew an order for protection, the court shall state in writing on the order the particular reasons for the court's denial." RCW 26.50.060(7). Noemi contends written reasons were not necessary because the court did issue an order for protection. We disagree. The court declined to issue an order of protection for two of the children. The court should have stated in writing its particular reasons for the denial.

The lack of written reasons hampers our review. Jose's petition alleged that Noemi physically assaulted all three children on the weekend in question and that all three children feared future visits with Noemi. These allegations, if believed, were sufficient to support an order protecting all three children. At the beginning of the hearing, the commissioner elicited Jose's sworn testimony that the allegations in the petition were true. A sworn petition for a domestic violence protection order functions as a declaration. Juarez, 195 Wn. App. at 885. The court did not find Jose's statements or NL's hearsay statements to be lacking in credibility. Yet, the court focused exclusively on the allegations pertaining to NL and singled her out as the only child in need of any form of protection. The stated reason for striking the other two children from the order was that "the only

_____

to trial court proceedings occurring after entry of the order on appeal as these events are not in the record. RAP 10.3(a)(5).

allegation brought before me involves one minor, 9-year-old [NL]." This was not a tenable reason because Jose's petition did bring before the court allegations that the other children had also been assaulted and were afraid. Jose alleged that Noemi hit the other children with a belt and shoes and they "are afraid of what will happen to them" when they are in Noemi's care. These allegations were neither acknowledged nor addressed.

The definition of domestic violence includes not only physical harm but also "the infliction of fear of imminent physical harm, bodily injury or assault." RCW 26.50.010(3)(a). Even when there is no evidence of a direct assault on a child, fear of violence is a form of domestic violence that will support an order for protection. Stewart, 133 Wn. App. at 551. Once the court found that Noemi's treatment of NL satisfied the definition of domestic violence, it would have been reasonable to consider whether the other children were fearful of similar treatment. The order does not reflect such consideration.

Noemi contends the court was justified in disregarding allegations about the other children because Jose's petition relied on hearsay and was uncorroborated. She contends Stewart is distinguishable because the court had stronger evidence that the father's assaults on the mother made the children fearful, including evidence that one child tried to call 911. Stewart, 133 Wn. App. at 551. But the holding of Stewart—that imminent psychological harm to children is a proper statutory basis for a protection order—is not limited to the facts of that case. Hearsay evidence is admissible in the protection order proceedings listed in ER 1101(c)(4), including proceedings under chapter 26.50 RCW. Gourley v.

12

Gourley, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006); Hecker v. Cortinas, 110 Wn. App. 865, 870, 43 P.3d 50 (2002). There is no requirement for corroboration and no requirement that the children testify to or voice their fear to establish that violence has made them fearful.

The evidence before the court was complex and susceptible to varying inferences. During the previous five years, the daughters were assaulted, CPS was involved, there were protection order proceedings, there was a dissolution proceeding, and for some period of time, Noemi was limited to supervised visitation. The CPS documents that Noemi relies on and the short update from Family Court Services do not really clarify the dates and interrelationships of these events nor do they provide concrete details of Noemi's role in them. Jose claimed Noemi pushed and pinched NL and hit the children as part of a pattern of physically and psychologically harmful conduct. Noemi denied inflicting the bruise and claimed the evidence showed, at most, an isolated act of reasonable discipline imposed on NL. NL's hearsay account of the incident conflicted to some degree with the hearsay statement of her older sister. Without written reasons to indicate how the trial court evaluated the evidence, it is unclear why the court granted protection only for NL.

On remand, the trial court shall reconsider Jose's request to grant protection to the two excluded children in light of this opinion. The court shall also consider whether to impose protective residential provisions concerning the two other children, as it did for NL. RCW 26.50.060(1)(d). If the court declines to

13

order protection for any one of the children, the court shall state in writing on the order the particular reasons for its denial. RCW 26.50.060(7).

RELATIONSHIP OF PROTECTION ORDER TO PARENTING PLAN

The duration of a domestic violence protection order is specified by the statute. It provides that if a protection order "restrains the respondent from contacting the respondent's minor children," the restraint shall be for a fixed period not to exceed one year. RCW 26.50.060(2). For other forms of relief or restraint, the court may order protection for a longer fixed period or permanently if the court finds that the respondent "is likely to resume acts of domestic violence against the petitioner or the petitioner's family or household members or minor children when the order expires." RCW 26.50.060(2).

Jose requested an order that would remain effective longer than one year. The court limited the order protecting NL to four months on the ground that anything longer would be a "back door modification of a parenting plan." Jose assigns error to this ruling.

Juarez, a decision issued after the superior court proceedings in the present matter, holds that "limiting the duration of the protection order in deference to a separate marital dissolution proceeding contradicts RCW 26.50.025(2)." Juarez, 195 Wn. App. at 888. We join the Juarez court in that holding.

The legislature intended for victims of domestic violence to have "easy, quick, and effective access to the court system." LAWS OF 1992, ch. 111, § 1.

14

Relief is not to be "denied or delayed on the grounds that the relief is available in another action":

> If a party files an action under chapter 26.09 [Parenting Act of 1987], 26.10, or 26.26 RCW, an order issued previously under this chapter between the same parties may be consolidated by the court under that action and cause number. Any order issued under this chapter after consolidation shall contain the original cause number and the cause number of the action under chapter 26.09, 26.10, or 26.26 RCW. *Relief under this chapter shall not be denied or delayed on the grounds that the relief is available in another action.*

RCW 26.50.025(2) (emphasis added).

The trial court's rationale for limiting protection for NL to four months comes from language in In re Marriage of Barone, 100 Wn. App. 241, 996 P.2d 654 (2000), cited by Noemi in her brief responding to the motion to revise. In Barone, a one-year protection order was issued to move a child out of the household of the residential parent designated by the parenting plan and into the household of the other parent who was obligated to pay child support. The obligor parent requested equitable relief from past due support. In explaining why courts lack authority to grant equitable relief in those circumstances, this court stated that protection orders may not function as "de facto modifications of permanent parenting plans and child support decrees." Barone, 100 Wn. App. at 247.

As explained in Stewart, Barone addresses a child support issue and is not pertinent to establishing the duration of a protective order. A one-year order is a temporary interruption of contact, not a de facto modification of an existing parenting plan. "No rational person would voice an objection to temporary

15

suspension of contact where a person has physically abused his children. The legislature considers domestic violence by way of infliction of fear to be equally worthy of swift intervention." Stewart, 133 Wn. App. at 555.

In Juarez, a wife requested a protection order to remain in effect longer than one year. The trial court granted a protection order of only 65 days. The trial court ruled that was enough time to maintain the status quo until the parties could get into court for a hearing in the marital dissolution proceeding that the husband had just initiated. Juarez, 195 Wn. App. at 884. The order was reversed on appeal in a split decision. The majority held that the trial court decision contradicted the language of RCW 26.50.025(2). The dissenting judge would have affirmed the short-term order on the grounds that the hearing was perfunctory, proof was sketchy, and the finding of domestic violence was boilerplate. Juarez, 195 Wn. App. at 893 (Lawrence-Berry, J. dissenting). "Even experienced jurists lack prescience to know which party is being truthful and which is not. When faced with uncertain claims of domestic violence—and most claims that lack at least one nonparty witness are uncertain—trial courts would rather enter immediate but limited relief." Juarez, 195 Wn. App. at 894 (Lawrence-Berry, J. dissenting).

The Juarez majority recognized the difficulty a court faces in discerning the truth in this type of hearing, but "nevertheless, the law compels a judge to perform her or his best and to issue a ruling as to whether domestic violence occurred and protection is needed. Although we recognize our trial judges as being overworked with crowded dockets, we trust our judges to take the time and

16

conduct a hearing sufficient to arrive at the truth. We believe our trial judges normally possess the ability to find the truth." Juarez, 195 Wn. App. at 891-92.

The majority opinion in Juarez correctly interprets RCW 26.50.025(2) in light of the purpose of the statute. Deferring the protection decision to another court in another action is too likely to create a gap endangering the safety of the person for whom protection is sought. Counsel explained to the revision court the problem a short-term order would create for Jose:

> Protection order actions are supposed to be quick, easy, and efficient so the courts can intervene quickly before further abuse can happen, and punting the issue to another court with a different timetable and focus, that just disregards the intended purpose of the [Domestic Violence Prevention Act].
> Sending parties back to Snohomish County for modification action, it further prejudices the petitioner as well. He is indigent; he receives free legal assistance from my office at Seattle's Union Gospel Mission. He requires an interpreter as he does not speak fluent English. He suffers from a number of physical disabilities. He lives in south King County, and it's difficult for him to travel up to Everett for further hearings. He's missed school to attend hearings in the past. He's borne the burden of caring for his children, finding childcare and transportation for that, and not granting him a yearlong protection order is only increasing the burdens he's facing as he seeks further justice here.

The statute does not support requiring the party seeking protection to quickly initiate some other proceeding to avoid a gap in protection. If another proceeding does occur, for example if either Jose or Noemi petitions in Snohomish County to modify the parenting plan, the court there may consolidate the protection order with the modification proceeding and make changes to the order as the court sees fit. RCW 26.50.025. But a court hearing a petition for a protection order in the first instance cannot count on some other proceeding being readily available to investigate the controversy more thoroughly.

17

In short, the rationale of avoiding a "back door modification" to the parenting plan was not a tenable basis for limiting the order to four months or for denying protection for NL's siblings. On remand, the court should reconsider the four-month limit in light of this opinion.

## DURATION OF PROTECTIVE ORDER

Jose contends the statute establishes a presumption that domestic violence protection orders be entered for at least one year. He requests that we direct the trial court on remand to enter a one-year order.

The only reference in the statute to a one-year minimum is in the section concerning service of summons by publication. RCW 26.50.085(3). The legislative intent reflected in this section is to give notice that a protection order will be issued for a minimum of one year if there is no response to the summons. The section does not have a more general application. In a case not involving service by publication, the trial court need not grant a one-year order if tenable grounds support the refusal. Juarez, 195 Wn. App. at 891.

Reversed and remanded for further proceedings.

Becker, J.

WE CONCUR:

Mann, J.

Appelwick, J.

18