# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIANA M. FIELDS,

    Respondent,

   v.

MARKUS ANDERSON FIELDS,

    Appellant.

No. 86861-6-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Markus Fields appeals the entry of a one-year domestic violence protection order (DVPO) protecting his former spouse, Diana Fields. A court commissioner entered the DVPO based on evidence, including Diana's testimony at a contested DVPO hearing, that Markus repeatedly entered her living space without invitation to do so, took her property, dismantled and destroyed her alarm system, and threatened her and her son.[1] Markus filed a motion for revision, which the superior court denied. Because substantial evidence supports the superior court's determination that Markus engaged in acts of domestic violence against Diana, we affirm.

A commissioner's decision granting a DVPO is subject to revision by the superior court. RCW 2.24.050. On a motion to revise, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence

---

[1] Because the parties share the same last name, we use their first names for clarity.

and issues presented to the commissioner. *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). A denial of revision "constitutes an adoption of the commissioner's decision, and the court is not required to enter separate findings and conclusions." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). On appeal, we review the superior court's ruling, not that of the commissioner. *Id.* We review the superior court's decision for abuse of discretion, which occurs when the court exercises discretion on untenable grounds or for untenable reasons or reaches its decision by applying the wrong legal standard. *Id.*

"We review challenges to a trial court's factual findings for substantial evidence." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Id.* Additionally, we "'view the evidence and reasonable inferences in the light most favorable to the party who prevailed below'" —in this case, Diana. *Garza v. Perry*, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023) (quoting *State v. Living Essentials*, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019)). We also defer to the superior court's determinations regarding "the persuasiveness of the evidence, witness credibility, and conflicting testimony." *In re the Matter of the Vulnerable Adult Pet. for Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). We may affirm the superior court on any basis supported by the record. *State v. Bunner*, 86 Wn. App. 158, 161, 936 P.2d 419 (1997).

Markus claims the evidence was insufficient to establish that he engaged in acts of domestic violence or that he represented a credible threat to Diana's safety. Under RCW 7.105.225(1)(a), a trial court must issue a DVPO if it finds by a preponderance of

the evidence that "the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.010(9)(a) defines "domestic violence" for purposes of a protection order as:

> [p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; *coercive control*; unlawful harassment; or *stalking* of one intimate partner by another intimate partner.

(Emphasis added). The statute further defines "coercive control" as:

> a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty.

RCW 7.105.010(4)(a). When evaluating unreasonable interference, a court must "consider the context and impact of the pattern of behavior from the perspective of a similarly situated person." RCW 7.105.010(4)(a). The statute sets forth a non-exclusive list of examples of coercive control that includes (1) "intimidation" by "damaging, destroying . . . or forcing the other party to relinquish, goods, property, or items of special value," (2) "[d]epriving the other party of basic necessities," (3) "[c]ontrolling" or "monitoring the other party's movements" or "daily behavior," and (4) "[e]ngaging in psychological aggression." RCW 7.105.010(4)(a)(i)(A), (H)(iii), (H)(iv), (H)(vi).

According to Markus, the superior court failed to properly consider the "full context" of his conduct of repeatedly returning to the family home and removing property after the parties began living separately. Marcus notes, for example, that no court order prohibited him from entering the family home until a no-contact order was entered against Diana in March 2023, no evidence established that Diana requested that he refrain from entering the home, he was a co-owner of the home and continued to make financial contributions toward it, Diana had previously signed a "written divorce agreement" in which she agreed

that certain items would be awarded to him and stored at the home, he needed to protect his property from being damaged by Diana, and it was necessary to go the family home because the parties' daughter still lived there with Diana.

Markus's characterization of the "context" of his actions relies on a selective and subjective interpretation of the evidence and ignores the applicable standard of review. In her DVPO petition and accompanying statements, Diana alleged that after he moved out of the home, Markus "continuously" returned "whenever he want[ed]," took "property and damage[d] property." Diana testified that Markus often entered the home when she was not present and removed items to the point where the house was "halfway empty." Diana specifically recounted an incident when Markus and two unknown men "aggressively" entered the home and left with the television. She also alleged that the day after she had a new alarm system installed, Markus removed the alarm device mounted outside the house and damaged it by submerging it in water. Diana testified at the DVPO hearing that she needed a new alarm after she uninstalled security cameras that Markus was using to monitor her movements. Diana also testified that after entry of the March 2023 no contact order, Markus returned to the family home in the early hours of the morning, removed a lawnmower from the driveway, and slashed the tires of her friend's van.

Although Markus testified that he only removed items he was authorized to take under a prior written agreement, there was no evidence of the specific terms of any such agreement. And, according to Diana, when Markus entered the home to remove a generator, he expressly told her that he was doing so because, "this is his house. He is on the deed. He's paying for everything. And therefore he can remove whatever,

whenever, he wants and I can have nothing to say about it." This testimony was consistent with Markus's explanation at the DVPO hearing that he removed the outside alarm device because it was an unknown device "on my house."

Viewing the evidence in the light most favorable to Diana and deferring to the superior court's determination of credibility and resolution of conflicting evidence, the evidence is sufficient to persuade a fair-minded, rational person that Markus engaged in a pattern of behavior toward Diana that served no lawful purpose and unreasonably interfered with her free will and personal liberty, as required to establish "coercive control" under RCW 7.105.010(4)(a). Sufficient evidence also supports the inference that Markus's conduct was intended to cause, and did cause, emotional and psychological harm to Diana. According to Diana's testimony, as a result of Markus's "repeated threats," continual invasions of her personal space, and removal and destruction of property, including her alarm system, she "no longer fe[lt] safe." Substantial evidence supports the superior court's finding that Markus committed acts of coercive control against Diana, and this finding alone supports entry of the DVPO.

Markus further challenges the superior court's finding that he represented a credible threat to Diana, claiming there was no evidence that he threatened or caused physical harm to Diana or the parties' children.[2] Markus cites *In re Parentage of T.W.J.*, 193 Wn. App. 1, 6-7, 367 P.3d 607 (2016), wherein this court upheld a finding that the respondent represented a credible threat based on a report of the respondent's threat to kill the petitioner. Markus contrasts the factual circumstances in *T.W.J.* with those here,

---

[2] Although the commissioner's oral ruling indicated that the parties' two children were not covered by the terms of the DVPO, the written order appears to include them as protected parties. However, since the DVPO before us on appeal has now expired, it is unnecessary to remand to correct the apparent error.

5

but his argument is unavailing because domestic violence is not confined to physical harm. And although Diana's primary allegation related to Markus's continual uninvited entry into her living space and taking property, she also reported that, during their relationship, Markus was physically aggressive and sexually coercive, had engaged others to physically harm her child from another relationship, and was currently threatening her and threatening to evict her son. In light of evidence and the court's finding that Markus committed repeated acts of coercive control, the superior court did not err in finding that he represented a credible threat.[3]

Markus also argues the superior court, in denying his motion for revision, inappropriately deferred to the commissioner's findings. The record does not support that assertion. While the court noted the obvious disadvantage of relying on a transcript, as opposed to live testimony, to evaluate witness credibility, there is nothing to suggest that the court applied a deferential standard of review to the commissioner's findings. To the contrary, the court expressly acknowledged its application of the proper de novo standard of review. The record reflects that, upon a de novo of the record, the superior court simply agreed with the commissioner's determination that the evidence was sufficient to establish domestic abuse by coercive control.[4]

---

[3] Although the court restrained Markus from engaging in stalking and found that he represented a credible threat, the court did not include firearm provisions in the DVPO. *See* RCW 9.41.800(2)(b), (c)(i) (when order restrains party from stalking and order includes a credible threat finding, court is required, among other things, to order surrender of firearms and prohibit restrained party from obtaining or possessing firearms). As explained, we do not need to address the sufficiency of the evidence supporting the finding of stalking or the apparent discrepancy.

[4] Because we hold that substantial evidence supports the superior court's finding that Markus committed acts of coercive control against Diana and this finding alone supports entry of the DVPO, it is not necessary to address whether the evidence also supported the finding that Markus engaged in domestic violence by stalking. *See* RCW 7.105.010(9) (domestic violence means, among other things, stalking); (34) (defining stalking).

Finally, Markus argues that the superior court abused its discretion by failing to remand the matter to the commissioner to further develop the factual record based on purported connectivity issues during Diana's testimony at the DVPO hearing and details Diana mentioned in her oral presentation on the motion for revision that were arguably inconsistent with earlier statements. But the transcript of Diana's testimony was comprehensible, especially when read in conjunction with her written statements in support of her petition for a DVPO. And since Diana's argument on revision was not evidence, any misstatements or discrepancies did not create any evidentiary conflicts. *See Strandberg v. N. Pac. Ry. Co.*, 59 Wn.2d 259, 265, 367 P.2d 137 (1961) ("argument is not evidence").

Affirmed.

Feldman, J.

WE CONCUR:

Coburn, J.                                        Mann, J.