IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LOANITA ADAMS, | No. 86361-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| NASRO UGAS, | |
| Respondent. | |

COBURN, J. — Loanita Adams appeals the denial of an antiharassment protection order she filed against her neighbor. We affirm.

FACTS/PROCEDURAL HISTORY

In 2019, Adams moved into a residence managed by the Seattle Housing Authority (SHA). She lived there with her daughter and granddaughter. In 2020, the husband of her neighbor, Nasro Ugas, knocked on Adams' door with his son. Adams asserts that they indicated they had a parking spot that Adams had parked in and that they had two parking spots and Adams only had one. In October 2020, Adams emailed an SHA manager to verify the parking situation. The manager responded that there was no assigned parking at their location at that time and that Adams could park anywhere, but that each household was limited to one vehicle. If a second vehicle is parked without a sticker, they risked getting their car towed at their expense. The manager asked Adams to provide the name of the person who talked to Adams so that the manager

could call the person to clarify.

Adams testified that the information was tough for her neighbors to accept and that things went "downhill" from there. Adams asserts that she started experiencing abusive behaviors.

In November 2023, Adams petitioned for an anti-harassment protection order against Ugas.[1] In her petition, Adams asserts that the most recent incidents of harassment involved Ugas taking a picture of Adams' daughter when she went outside, and enlisted "other Samoli neighbors in the area to get involved in her harassment." She also said they were "slamming rails to cause disturbance into my unit" and "[d]emonstrating hostilities toward me and my visiting guest. Doing things to cause me to move out. We fear for our safety." Adams also asserted that Ugas' "children has spread rumors which can affect her relationship with other kids in the neighborhood. I have to change schools to make sure of her safety. [Ugas'] son will travel into my yard to get a soccer ball that he keeps kicking into my yard (trespassing)."

An attorney filed a notice of appearance on behalf of Ugas. Adams proceeded pro se. A pro tem commissioner denied a temporary order of protection and set the matter for full hearing to be held on December 4.

Based on the record before us, the next hearing that was held was on December 18.[2] At this hearing, a pro tem commissioner provided Adams with written instructions on how to upload video evidence into Sharefile, the court's file sharing system. The

---

[1] We note that Adams did not designate her petition to be included in the clerk's papers. She did designate her notice of appeal, in which she attached a copy of her petition. In doing so, only the odd-numbered pages were included.

[2] It is unclear from the limited record before us as to why the hearing was continued from December 4 to December 18.

commissioner also directed Adams to deliver to Ugas' counsel by December 20 any supplemental documents she intended to rely on for the next hearing, as well as file originals with the clerk of superior court. The commissioner also required proof of service of petitioner's "#7." The commissioner noted that there would be "no additional continuances unless extraordinary or emergent circumstances." Printed instructions also gave Adams notice that "[f]ailure to follow this order regarding submission of any additional documents may result in your documents not being considered at the next hearing."

The next day, Adams submitted multiple exhibits including two videos Adams described as "impact ball hitting door" and "boy throwing ball on front roof." According to the "UNSCANNABLE DOCUMENT COVERSHEET," Adams submitted these as one exhibit on a thumb drive and in a format that the deputy clerk could not convert into scanned electronic images, and, instead, following local court rules, stored and identified the submission as "File Exhibit."

At the December 28 hearing, Adams explained to the court the ways in which Ugas and her family had harassed her since she moved into the apartment complex. She asked the court if it had the evidence she submitted regarding the abuse. A pro tem commissioner had reviewed everything the prior day but explained they had no ability to get the thumb drive. The court asked the bailiff to contact the court clerk to find out how the commissioner could get the thumb drive. Ugas' counsel then addressed the court explaining that Adams was in the same position at the previous hearing where she said that she did not know how to upload documents. Counsel stated that the commissioner at that prior hearing gave Adams another opportunity to have everything filed by

December 20. Counsel asserted that he had not been served anything and did not know about a thumb drive and objected to the court considering anything additional. The court asked Adams if she had made two thumb drives and provided one to the court and the other to opposing counsel. Adams responded, "I didn't need to, was my understanding." The court ruled that because Ugas' counsel did not get exactly what was submitted to the court, the court was not going to consider the evidence on the thumb drive.

The court was able to observe photographs and everything else Adams had submitted that was not on the thumb drive. In support of her petition, Adams had submitted emails, photographs,[3] and partial police reports of her complaints.

This included the October 2020 email exchange with SHA about clarifying the existence of assigned parking. In April 2021, Adams emailed SHA again asserting that the same neighbor that claimed to have two parking spaces, blocked a guest of Adams' from leaving the area and has been leaving notes on the car claiming that space. Adams also submitted an October 2021 email exchange with what is presumably her granddaughters' school. The school informed Adams that her granddaughter was playing with a friend on the playground the day before when the friend kicked a ball that went through the granddaughter's legs, which tripped her causing her to fall. Adams responded that she had a concern about her granddaughter being subject to bullying from a neighbor's child. Adams said the child also attends the same preschool but is in a different class. The school responded that they will keep an eye out to make sure that behavior does not happen at the school.

In January 2022, Adams filed another police report. Adams submitted only

---

[3] Adams did not designate the submitted photographs in the clerk's papers.

4

portions of the report to the court. It included when it was reported, who reported it, the location of the occurrence and the following complaint from Adams:

> Harassment from residential occupants. Small boy child deliberately throwing ball against wall or doors inside their unit noise lasting for hours daily. Mother present not intervening. Daily stomping up and down the stairs inside their unit. Has been reported to property manager many times. Property belonging to the Seattle Public Housing. The family reporting are Samoli descendants. Mother has a hostility towards me because of previous complaints to property managers.

In February 2022, Adams filed another police report against residents in the same unit that she previously reported about in January 2022. This time she alleged that "residents" were "constantly throwing a ball against the walls and door inside their unit causing disruption inside my unit. Also stomping up and down the stairs lasting many hours during the evening hours." In July 2022, Adams filed another police report against the same neighbors. Adams alleged that "[t]enant members came into my yard knocking at my door complaining about my guest parking in an assigned space. Seattle housing has not set assigned space. Incident turned unpleasant. All part of neighbors harassment."

At the hearing, Adams listed other evidence of harassment by Ugas: something laying in her yard, a deliberately turned-over bush in her front yard, and her neighbor making remarks to her such as, "Oh, why are you see evil?" and "Why are you such a hater"? Adams said her neighbors' children "come into my yard and they're perhaps they're trying to get balls." Adams said she wanted to show a video of what "appears to be [her neighbor's son] throwing a ball on top of [her] roof." Adams also said she once called police after hearing a child scream at the top of their lungs "trying to get out of a closet, is what it appears to me." Since 2020, Adams said she has been disrupted by

5

daily pounding of a ball pushed up against the door. Adams said she "feared that [Ugas] would say something negative to cause a disruption with my relationship to others in the community."

Adams said she was worried enough that she had her granddaughter change schools. The court asked if something specifically happened to her granddaughter that is tied to Ugas. Adams explained that her granddaughter got hit in the head at school when two boys were fighting and "somehow" her granddaughter got into their quarrel. The court asked if the two boys attend Ugas' home daycare. Adams said she was not certain, but "I just felt like she probably knew of those kids."

Ugas' counsel argued that Ugas wants nothing to do with Adams as exemplified by Ugas obtaining an antiharassment protection order against Adams on November 17, after hearing from both parties on the merits. Counsel characterized Adams' petition, which was filed three days after Ugas obtained her protection order, as retaliatory and baseless. Adams did not object or dispute that she was the subject of the protection order obtained by Ugas.

The court denied Adams' requested order because of insufficient evidence. In doing so, the court stated,

> What it sounds to me like is she's got a daycare next door and kids are bouncing balls and they're crying and making noise and things are coming into your yard, but it's not the same thing as her taking action against you to harass you, so I'm not finding that you have met your burden and I am denying the order.

The court later denied Adams' motion for reconsideration.

Adams appeals.

6

DISCUSSION

Adams asserts that (1) the superior court incorrectly failed to consider the evidence that she submitted, which were pertinent to her case, and (2) the court erred in denying her petition for a protection order, despite presenting evidence that met the preponderance of the evidence standard.

Exclusion of Evidence

Adams argues that the court should have done more to allow the commissioner to access and view the evidence she submitted to ensure her petition was properly heard. Otherwise, the court is not able to properly exercise its discretion. Adams asserts that the court had trouble opening the "thumb drive [i]con" because of "technical issues or because she could not open it."

Adams misconstrues the record. A different pro tem commissioner, at the December 18 hearing, provided Adams with written instructions on how to upload videos to the court's file-sharing system, Sharefile. The court continued the hearing to give Adams time to do so. The court also directed Adams to provide copies to opposing counsel by December 20, 2023. Adams did not upload her videos or documents from the thumb drive into the Sharefile system. Instead, she submitted a thumb drive to the court without also providing a copy of that thumb drive to opposing counsel.

At the December 28 hearing, Adams referred to evidence submitted on the thumb drive that the pro tem commissioner had not previously reviewed because of lack of access. Despite the fact the contents of the thumb drive had not been uploaded into the Sharefile system as directed, the commissioner asked the bailiff to work on getting access to the thumb drive. That is when Ugas' counsel objected, asserting that Adams

7

had not provided anything to him after being directed to do so at the December 18 hearing and that counsel knew nothing about a thumb drive. Adams conceded that she had not provided a copy of the thumb drive to opposing counsel, explaining that she did not know she was required to do so. But Adams was given specific instructions regarding submitting documents for the next hearing. These instructions directed Adams to deliver her evidence to opposing counsel no later than December 20. The instructions included a notice that warned: "Failure to follow this order regarding submission of any additional documents may result in your documents not being considered at the next hearing." Generally, Washington "[c]ourts hold pro se litigants to the same standards as attorneys." In re Vulnerable Adult Petition for Winter, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020).

It was because Adams failed to provide the supplemental evidence to opposing counsel as directed prior to the hearing that the court ruled it would not consider the contents of the thumb drive.

A trial court's decision to exclude evidence will be reversed only where it has abused its discretion. Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). An abuse of discretion occurs when the trial court's decision is based on untenable grounds or untenable reasons. Id. Adams presents no argument as to how the court's decision to exclude the evidence on the thumb drive was based on untenable grounds or for untenable reasons. Adams has not demonstrated that the court abused its discretion in declining to consider the evidence on the thumb drive under these circumstances.

<u>Insufficient Evidence</u>

Adams also contends that the court erred in denying her petition because the evidence she presented clearly demonstrates the ongoing harassment and intimidation tactics employed by Ugas and her household.

We review a court's decision to grant or deny a request for a protection order for an abuse of discretion. <u>Maldonado v. Maldonado</u>, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. <u>In re Marriage of Chandola</u>, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Adams sought an antiharassment protection order under RCW 7.105.100(f).[4] Under RCW 7.105.010(36)(a), unlawful harassment is defined as:

> A knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

A court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria for an antiharassment protection order, that the petitioner has been subjected to unlawful harassment by the respondent. RCW 7.105.225(1)(f). Appellate courts will not disturb a trial court's discretion to enter permanent protection orders absent an abuse of discretion. <u>Hecker v. Cortinas</u>, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). "We will not substitute our

---

[4] Adams mistakenly cites former RCW 10.14.080, which was repealed by LAWS OF 2021, ch. 215, § 170 (effective July 1, 2022).

judgment for the trial court's, weigh the evidence, or adjudge witness credibility." Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

Adams does not acknowledge the standard of review or attempt to argue how the court abused its discretion in denying the petition for insufficient evidence. Instead, Adams appears to ask this court to reweigh the evidence presented and, without citation to the record, conclude she was not given a fair hearing because she was prevented from introducing her evidence. We are not required to address arguments not supported by citation to the record or meaningful legal authority. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). To the extent Adams' argument refers to the court excluding the evidence on the thumb drive, we have already addressed that above. Moreover, the court still allowed Adams to explain what would have been shown on the videos. Adams said it captures the noise that is actually happening daily with a ball being thrown loudly against a door. Adams also explained that a video would have shown Ugas' son who "appears to be throwing a ball on top of [Adams'] roof."

The court determined that Adams had not demonstrated a "knowing and willful course of conduct" by Ugas that was directed at Adams with the intent to harass, annoy, or alarm her, nor that the conduct served "no legitimate or lawful purpose." Adams has

not shown that the trial court abused its discretion in denying her petition.

    We affirm.

_Cohen, J._

WE CONCUR:

_Feldman, J._        _Mann, J._