**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| MIA TOLES, | No. 87615-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| | UNPUBLISHED OPINION |
| GEORGE TOLES, | |
| Appellant. | |

FELDMAN, J. — George Toles, proceeding pro se, appeals a domestic violence protection order (DVPO) protecting his stepdaughter, Mia Toles, for a two-year period and a related order to surrender and prohibit weapons. Because the trial court failed to correctly apply the controlling statutory provisions to the conduct at issue, we reverse both orders.

I

On May 23, 2024, following many months of ongoing conflict and related legal proceedings, Mia, an unemancipated minor child at the time, filed a petition for a DVPO alleging that George had committed various acts that constituted "domestic violence" as defined in RCW 7.105.010(10)(b).[1] In her petition, Mia claimed George had assaulted her; taken away her cell phone; "attempted to thwart" her academic success by requiring that she unenroll in the Running Start

---

[1] Because the parties have the same last name, we use their first names for clarity.

educational program; placed tracking devices on her vehicles; asked one of friends to bring her to an agreed location so George and his wife, Phuong Toles (Mia's biological mother), could bring her home; "yelled at"[2] and "berated" her; and filed in court evidence that she had shared intimate photos with a romantic partner.[3] George characterizes these behaviors as "helping his wife recover their runaway child from an unlawful, dangerous situation," while Mia describes them as "an escalation of physical and mental abuse at the hands of her step-father."

Although the trial court's DVPO includes a preprinted finding that "[t]he restrained person has subjected the protected person to domestic violence," it does not include any specific findings regarding the alleged misconduct. Instead, the court incorporated by reference its "oral ruling." In that ruling, the court found insufficient evidence that George had assaulted Mia but concluded she had established "stalking-type behavior . . . and/or harassing-type of behavior" and "coercive control." It then found, "Mia has met her burden to prove domestic violence by a preponderance of the evidence." The court described the matter as "a very close case" and "not a straightforward resolution." It nevertheless granted Mia's petition, entered a two-year DVPO protecting her from George (expiring on September 24, 2026), and entered a related order to surrender and prohibit weapons. George then filed a motion for reconsideration, which the court denied. This timely appeal followed.

---

[2] Elsewhere in the record, Mia explains that George yelled at her "about how ungrateful I was," "for forgetting to wash the dishes," "about my attitude," and that "I'm to blame for the fact that he does not have a relationship with his sons." No further information is provided.

[3] Although George admittedly failed to file the photos under seal in accordance with GR 15, the trial court immediately rectified this serious oversight.

II

George argues "[t]he errors here span multiple categories: jurisdictional defects, statutory misapplications, discretionary abuses, and constitutional violations." Because we agree the trial court did not correctly apply the DVPO statute to the conduct at issue, we reverse on that basis. We therefore need not reach George's remaining arguments.

We review the trial court's decision to grant a DVPO for abuse of discretion. *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). "An abuse of discretion is found when a trial judge's decision is exercised on untenable grounds or for untenable reasons, or if its decision was reached by applying the wrong legal standard." *Id.* A trial court also abuses its discretion "if it applies the law incorrectly." *In re Custody of SA-M*, 17 Wn. App. 2d 939, 951, 489 P.3d 259 (2021). "We review challenges to a trial court's factual findings for substantial evidence," which "exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011).

RCW 7.105.010(10)(b) defines "domestic violence" for purposes of a DVPO involving family or household members as

> [p]hysical harm, bodily injury, *assault*, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; *coercive control*; *unlawful harassment*; or *stalking* of one family or household member by another family or household member.

(Emphasis added.) Relevant to Mia's arguments in the trial court below, the definition includes assault, coercive control, unlawful harassment, and stalking.

As noted previously, the trial court found insufficient evidence that George had assaulted Mia. Mia has not cross-appealed that finding, so it is a verity on appeal. *In re Dependency of A.N.C.*, 24 Wn. App. 2d 408, 416, 520 P.3d 500 (2022). Nor did the court find "unlawful harassment" or "stalking." Instead, the court found that Mia had established "stalking-type behavior . . . and/or harassing-type of behavior." These "findings" are wholly inadequate, as the DVPO statute requires "unlawful harassment" or "stalking" and expressly defines the meaning of those terms in RCW 7.105.010(37) and (35), respectively. Here, the most this court can conclude is that the trial court found that George's actions *resembled* stalking *or* harassment but not necessarily either. In so ruling, the trial court failed to make an express finding of "unlawful harassment" or "stalking" as defined by the statute.[4]

While the trial court expressly found "coercive control," it again failed to correctly apply the controlling statutory provision. The DVPO statute defines "coercive control" as "a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty." RCW 7.105.010(4)(a). Also relevant here, the statute provides a non-exclusive list of examples of coercive control that includes (1) "intimidation" by "[d]amaging, destroying . . . or forcing the other party to relinquish, goods, property, or items of special value,"

---

[4] The trial court's oral ruling is also confusing in another respect. After reciting the definition of domestic violence, including the reference to assault, the trial court stated, "Other things that *don't* apply: coercive control, unlawful harassment, or stalking of one family or household member by another family or household member." (Emphasis added.) Given the trial court's subsequent analysis of these issues, as discussed in the text above, we assume the italicized text "don't" was transcribed in error though the parties in their briefing have not so stated.

(2) "[d]epriving the other party of basic necessities," (3) "monitoring the other party's movements," and (4) "[e]ngaging in psychological aggression." RCW 7.105.010(4)(a)(i)(A), (iii), (iv), (vi).

But the statutory definition also recognizes the salutary interests of parental caregivers such as those at issue here. It does that in two ways. First, subsection (a) provides that "[i]n determining whether the interference is unreasonable, the court shall consider the context and impact of the pattern of behavior from the perspective of a similarly situated person." RCW 7.105.010(4)(a). Second, subsection (b) states that coercive control "does not include protective actions taken by a party in good faith for the legitimate and lawful purpose of protecting . . . children from the risk of harm posed by the other party." RCW 7.105.010(4)(b). Thus, context matters; while the actions described in subsection (a) may warrant judicial intervention in some circumstances, they may be both appropriate and permissible when their intended purpose and effect is to locate, protect, and retrieve a runaway minor.

Here, the trial court identified only two actions that purportedly constituted "coercive control": the first was "coordinating with someone Mia thought was her friend to deliver her" to her parents, and the second was an "unreasonable level of monitoring a nearly grown woman," which the trial court stated "is concerning." As to both instances, George testified *without contradiction* that these behaviors were intended to protect and retrieve Mia (who was an unemancipated minor at the time) from what George and his wife believed was a destructive lifestyle that included "running away," driving cars without insurance, and various other "illegal, high-risk

activities." Contrary to the plain language of RCW 7.105.010(4)(a) and (b), as discussed above, the trial court failed to sufficiently consider the protective purpose and effect of George's actions. Nor did it identify any behavior that is not plausibly related to purported protection of an unemancipated minor.

Based on our careful review of the trial court record alongside both parties' arguments, we conclude the trial court failed to correctly apply the controlling statutory provisions (as detailed above) to the conduct at issue and thereby abused its discretion in entering the DVPO and related order to surrender and prohibit weapons. To be sure, we agree with the trial court—and the record confirms— that this is a "very close case" and "not a straightforward resolution." But as the trial court also noted, Mia is now emancipated and no one has alleged any behavior that falls under the DVPO statute after the decree of emancipation. If and to the extent any such behavior commences, nothing herein precludes Mia from seeking an appropriate protection order (supported by sufficient findings of fact and conclusions of law) based on conduct that satisfies the controlling statutory requirements.

III

We reverse the DVPO and related order to surrender and prohibit weapons.

Feldman, J.

WE CONCUR:

Coburn, J.                           Mann, J.

- 6 -